GEORGE HELMER AND GLADYS M. HELMER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent T. L. HELMER AND HELEN HELMER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Helmer v. Commissioner
Docket Nos. 717-73, 718-73.
United States Tax Court
T.C. Memo 1975-160; 1975 Tax Ct. Memo LEXIS 212; 34 T.C.M. (CCH) 727; T.C.M. (RIA) 750160; May 27, 1975, Filed Gene F. Reardon and Gene W. Reardon, *213 for the petitioners Charles H. Cowley, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined deficiencies in petitioners' income taxes for taxable years and in the amounts as follows: T. L. and Helen Helmer Year
Deficiency
1964
$1,247.53
1967
1,010.00
1968
2,030.00
1969
2,131.00
George and Gladys M. Helmer Year
Deficiency
1967
$3,891.00
1968
2,572.00
1969
3,191.00
The issues are: (1) Whether George Helmer and T. L. Helmer operated a business as a partnership; (2) assuming a partnership, whether certain real estate optioned to Eagle County Development Corporation was owned by that partnership; (3) whether option payments made directly to George and T. L. Helmer constitute distributions to them by the partnership; and (4) whether the distributive share of corrected partnership losses are unallowable because the partners had no adjusted basis in their individual partnership interests at the end of the taxable years 1967, 1968 and 1969. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners in docket No. 717-73 are *214 George and Gladys M. Helmer, husband and wife who resided in Colorado at the time the petition was filed. They filed joint Federal income tax returns for taxable years 1967, 1968 and 1969 with the district director of internal revenue in Denver, Colorado. Petitioners in docket No. 718-73 are T. L. and Helen Helmer, husband and wife who resided in Nebraska at the time the petition was filed. They filed joint Federal income tax returns for the taxable years 1964, 1967, 1968 and 1969 with the district director in Denver, Colorado. George and T. L. Helmer conducted a cattle raising business sharing profits and losses on a 50-50 basis. They have never entered into any formal or written partnership agreement. Partnership returns of income were filed in the name of Helmer Brothers for the taxable years 1966, 1967, 1968 and 1969. The 1966, 1967 and 1968 partnership tax returns filed were signed by either T. L. or George Helmer. On November 9, 1967, George Helmer, T. L. Helmer, Cecelia Head, and Viola Knous as trustee under agreement with Cecelia Head, as optionors, entered into a written option agreement with Eagle County Development Corporation (hereinafter Eagle County Corporation), *215 a Colorado corporation, as optionee. Under the agreement, the optionors represented that they were the owners of fee simple title to certain real property situated in Douglas County, Colorado (hereinafter referred to as the Douglas County property). Approximately one-third of the Douglas County property was beneficially owned by Cecelia Head, who is not a party to this litigation. The remaining portion of the Douglas County property was owned by the Helmer Brothers partnership. The option agreement required the optionors to convey the Douglas County property to the Colorado National Bank of Denver as escrow agent for the parties. Accordingly, on November 22, 1967 T. L. and George Helmer conveyed by warranty deed the subject real property to the escrow agent. Also, pursuant to the option agreement, on November 7, 1967, Transamerica Title Insurance Company issued a title insurance policy evidencing merchantable title in the optionors to the optioned property. The option agreement granted Eagle County Corporation the option to purchase the Douglas County property for $800 per acre. Eagle County Corporation was required to pay an initial option consideration of $150,000 and annual *216 option considerations of $75,000 less amounts determined from the number of acres on which the option was exercised. The escrow agent was required to pay over such amounts to the optionors less taxes, interest and principal due on the property. Upon exercise of the option by Eagle County Corporation, the purchase price was to be reduced by the amounts of the initial and annual option considerations paid. During the term of the option, the optionors retained the right to remain in possession and enjoy profits from all parts of the Douglas County property. There were no provisions for repayment of the amounts paid under the agreement should the agreement terminate. An initial payment of $150,000 was made by the Eagle County Corporation in 1967. Also pursuant to the option agreement, annual payments of $75,000 were made by the optionee to the escrow agent in 1968 and 1969. During the taxable years 1967, 1968 and 1969, there was never any forfeiture of any of the option payments by the optionee, the option had not been terminated, nor was there any portion of the option exercised by the optionee during these years. Payments made by the optionee to the escrow agent were paid to the *217 optionors in accordance with the option agreement. The escrow agent issued three separate checks dated November 25, 1968, as follows: One to Cecelia Head for $24,374.62; one to T. L. Helmer for $24,139.04; and one to George Helmer for $24,139.04. The escrow agent also issued one check dated November 24, 1969, in the amount of $72,533.65 jointly to T. L. Helmer, George Helmer, Cecelia Head, and T. L. Helmer and Mary Lou Shields as trustees under agreement with Cecelia Head as payees. All checks were individually endorsed by the payees. The moneys received by George and T. L. Helmer were deposited directly into their personal accounts. The money was never deposited in the partnership bank account. None of the option payments made by the optionee in years 1967, 1968 and 1969 were reported as taxable income by any of the optionors or on the partnership return of Helmer Brothers. The partnership books and tax returns for 1966 through 1969 listed the land subject to the option as an asset of the partnership. The balance sheets of the partnership returns for 1967, 1968 and 1969 also listed the allocable part of the option deposit payments to George and T. L. Helmer as partnership liabilities. *218 The amounts received directly by petitioners were reflected as distributions to them on pertinent tax returns and on the partnership books. As of January 1, 1967, George and T. L. Helmer had adjusted bases in their individual partnership interests of Helmer Brothers of $21,012 and $21,506, respectively. T. L. Helmer received cash distributions from Helmer Brothers consisting of actual distributions and personal expenses paid by the partnership during 1967, 1968 and 1969, in the amounts of $45,436, $25,844 and $25,375, respectively. George Helmer received cash distributions from Helmer Brothers consisting of actual distributions and personal expenses paid by the partnership during 1967, 1968 and 1969, in the amounts of $45,436, $24,835 and $25,461, respectively. In a petition filed January 29, 1973, T. L. and Helen Helmer stated as an allegation of fact that "[during] all the years involved, petitioner husband was a partner with his brother in the Helmer Brothers partnership." A petition filed on January 29, 1973, by George and Gladys M. Helmer contained an identical paragraph. Amendments to these petitions were filed on March 19, 1974, which alleged facts that the option agreement *219 was entered into by George and T. L. Helmer, Cecelia Head and Viola Knous as trustee under agreement with Cecelia Head. OPINION Section 731 [1] generally provides that to the extent a distribution of money by a partnership to a partner exceeds the adjusted basis of his interest in the partnership immediately prior to such distribution, gain will be recognized by such partner. Respondent contends that George and T. L. Helmer conducted business as a partnership (Helmer Brothers) which owned the Douglas County property and entered into the option agreement. Respondent further contends that receipt of moneys pursuant to the option agreement were distributions of cash by Helmer Brothers to them in excess of their respective bases and therefore require the recognition of capital gains. Petitioners contend that: (1) there was no partnership; (2) the Douglas County property was individually owned by them rather than the partnership; and (3) alternatively, if the property was owned by the partnership, receipt of the option money by it created a partnership liability which increased the adjusted bases of T. L. and George Helmer in their partnership interests. *220 The first issue we consider is whether T. L. and George Helmer operated a partnership. Section 761 [2] generally provides that a partnership includes a joint venture or other unincorporated organization by means of which any business is carried on and which is not a corporation, trust or estate. We cannot accept petitioners' contention, raised at the trial, that no partnership existed. The determination of whether an enterprise is operated as a partnership or joint venture depends upon many factors. See, e.g., F. C. McDougal,62 T.C. 720 (1974), and Mihran Demirjian,54 T.C. 1691 (1970), affd. 457 F. 2d 1 (C.A. 3, 1972). In this case both petitioners in their respective petitions alleged as a fact that they were partners in Helmer Brothers partnership. Furthermore, the facts overwhelmingly indicate that they operated the enterprise as a partnership. Petitioners have stipulated that they conducted a cattle raising business sharing both profits and losses on a 50-50 ratio. Helmer Brothers also filed partnership tax returns for the taxable years 1966 through 1969. We hold that petitioners operated a partnership known as Helmer Brothers *221 for Federal income tax purposes. We next consider whether that portion of the Douglas County property in question was an asset of the Helmer Brothers partnership or was owned individually by T. L. and George Helmer. We note first that the evidence presented in this case was cursory at best. The lack of clear and cogent evidence going to the proof of ownership of this property, however, falls heaviest on petitioners as the determination of the Commissioner has a presumption of correctness and petitioners have the burden of proving it incorrect. Welch v. Helvering,290 U.S. 111 (1933), and Rule 142, Tax Court Rules of Practice and Procedure.
The primary facts which indicate that the property was an asset of the partnership are that it was listed on the partnership books as an asset and it was *222 included as an asset on each of the Federal partnership income tax returns filed by Helmer Brothers. Having represented to the Internal Revenue Service that this property was owned by the partnership, the partners are bound by such representation. See Demirjian v. Commissioner,457 F. 2d 1, 5 (C.A. 3, 1972). Petitioners argue that the presence of the property on the partnership tax returns should be disregarded because it was entered there by the accountant on mere assumptions and without verification as to real and record ownership of the option land. Mr. Eugene Straub, a certified public accountant, handled the books and the tax returns for Helmer Brothers in the years 1967 and 1968. He testified that he took the partnership records as they were given to him without verification of the record title of the property. That testimony, at very best, proves that the accountant had no personal knowledge of who owned the property in question. His testimony in no way aids in determining whether the partnership or petitioners individually owned the property. The fact does remain, however, that the property was included in Helmer Brothers partnership books and tax returns, *223 signed by either T. L. or George Helmer, during the years in issue and that option money arising from the option agreement was treated on the partnership books and tax returns as money received by the partnership. Petitioners have come forward with no evidence to contradict the representations made by them in their partnership returns. We therefore hold that the portion of the Douglas County property in question was owned by Helmer Brothers rather than T. L. and George Helmer individually. Having determined that the portion of the Douglas County property in issue was owned by the partnership, petitioners alternatively contend that no gain arose upon distribution of cash to T. L. and George Helmer because receipt of the option consideration created a partnership liability. Section 752 [3] generally provides that any increase in a partner's share of liability of a partnership should be treated as a contribution of money by such partner. This results in an increase in the basis of the partner's partnership interest by the amount of such liability. Section 1.752-1(a)(1), Income Tax Regs. Petitioners contend that receipt of the option payments by the partnership created a liability of *224 the partnership and increased their adjusted bases in the partnership by such amounts. Therefore distribution of the money received was not in excess of their adjusted bases. Respondent contends that no such liability arose and therefore no adjustments can be made in their bases. We are faced with a unique situation. [4] Helmer Brothers received payments pursuant to the option agreement when there was no forfeiture of any of the option payments, the option had not been terminated, nor had any portion of the option been exercised by the optionee. Respondent, in his brief, conceded that the income from the option payments was deferrable by the partnership until characterized as ordinary income (because of a default by the optionee) or capital gains (because of an exercise of the option by the optionee). Respondent *225 does contend, however, that the amounts distributed to T. L. and George Helmer were in excess of their bases because no liability arose upon receipt of such money. We agree with respondent that no liability arose upon receipt of the option payments by Helmer Brothers. There were no provisions in the option agreement for repayment of the amounts paid under the agreement should the agreement terminate. The moneys received under the option agreement were received *226 without any restrictions except that upon exercise of the option such amounts would be applied against the purchase price. Thus, the restriction only affected the character of the gain in the partnership's hands. It is this lack of ability to determine character of income (not any liability to repay or to perform) that causes the deferral of the recognition of the income by the partnership until the option is either exercised or lapsed. Hunter v. Commissioner,140 F. 2d 954 (C.A. 5, 1944), affg. a Memorandum Opinion of this Court; The Dill Company,33 T.C. 196 (1959), affd. 294 F. 2d 291 (C.A. 3, 1961); Virginia Iron Coal & Coke Company,37 B.T.A. 195 (1938), affd. 99 F. 2d 919 (C.A. 4, 1938), cert. denied 307 U.S. 630 (1939). The option agreement, however, created no liability on the part of the partnership to repay the funds paid nor to perform any services in the future. Therefore we hold that no liability arose under section 752 and the partners' bases cannot be increased by such amounts. The final issue is whether distributive shares of correct partnership losses are unallowable because *227 the partners had no adjusted basis in their individual partnership interests at the end of 1967, 1968 and 1969. Petitioners did not address this issue at trial or in their briefs. Since they have the burden of proof on this issue, we hold for respondent. Decisions will be entered for respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect during the years in issue, unless otherwise indicated. SEC. 731. EXTENT OF RECOGNITION OF GAIN OR LOSS ON DISTRIBUTION. (a) Partners.--In the case of a distribution by a partnership to a partner-- (1) gain shall not be recognized to such partner, except to the extent that any money distributed exceeds the adjusted basis of such partner's interest in the partnership immediately before the distribution, * * *↩
2. SEC. 761. TERMS DEFINED. (a) Partnership.--For purposes of this subtitle, the term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a corporation or a trust or estate. * * *↩
3. SEC. 752. TREATMENT OF CERTAIN LIABILITIES. (a) Increase in Partner's Liabilities.--Any increase in a partner's share of the liabilities of a partnership, or any increase in a partner's individual liabilities by reason of the assumption by such partner of partnership liabilities, shall be considered as a contribution of money by such partner to the partnership.↩
4. We believe that the problem created in this case is analogous to the receipt of tax-exempt income under section 705(a)(1)(B) which permits a partner's basis to be increased by the amount of such income so that upon distribution there will be no recognition of gain in excess of basis. We also note that the situation may run counter to the general concept of subchapter K that the partnership is a conduit as to income and loss items. Neither party, however, raised the issue whether, under other provisions of subchapter K, there would not be recognition of income to the petitioners in this case. We therefore express no opinion with regard to issues other than those raised by the parties as noted on page 2 of this opinion.↩