**MURFAM FARMS, LLC, by and through Wendell H. Murphy, Jr., a Partner other than Tax Matters Partner, PSM Farms, LLC, by and through Stratton K. Murphy, a Partner Other than Tax Matters Partner, Murphy Pork Partners, LLC, by and through Wendell H. Murphy, Jr., a Partner other than Tax Matters Partner, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**Nos. 06–245T, 06–246T, 06–247T.**

United States Court of Federal Claims.

July 30, 2009.

**518**

Joel Norris Crouch, Meadows Collier Reed Cousins & Blau, LLP, Dallas, TX, for Plaintiff.

Dennis M. Donohue, Chief Senior Litigation Counsel, Office of Civil Litigation, Tax Division, United States Department of Justice, Washington, D.C., counsel of record for Defendant, with whom were David M. Steiner, John A. Lindquist, Joe Pitzinger and Jonathan Blacker, Trial Attorneys, United States Department of Justice, Washington, D.C.

**OPINION**

DAMICH, Judge.

These are tax partnership cases. In this consolidated proceeding, Plaintiffs MUR-FAM Farms, LLC, PSM Farms, LLC, and Murphy Pork Partners, LLC (collectively "Plaintiffs" or "the partnership[s]"), by and through partners other than their tax matters partners, have petitioned this Court, under section 6226 of the Internal Revenue Code [1] ("I.R.C."), for a redetermination of administrative adjustments of partnership items and the imposition of accuracy-related penalties contained in the Notices of Final Partnership Administrative Adjustment ("FPAA") issued to them by the Internal Revenue Service ("IRS") for tax year ended December 27, 2000. In those FPAAs, the IRS determined, *inter alia*, that certain contingent obligations contributed to the partnerships during that tax year constituted liabilities for purposes of Treasury Regulation ("Treas. Reg.") § 1.752–6 ("the Regulation"),[2] the assumption of which by the partnerships mandated a reduction in each partner's basis in a partnership interest (termed "outside basis" or, in this Opinion, "basis"). Plaintiffs are challenging those determinations.

Pending before the Court is Plaintiffs' Motion for Partial Summary Judgment, filed on March 7, 2008, as to the validity of the Regulation. The Regulation purportedly disallows the sought-after tax treatment of the contingent liabilities assumed by Plaintiffs. More specifically, at the time the transactions at the heart of this case were entered into, in accordance with a line of cases of the United States Tax Court beginning with *Helmer v. Commissioner*, 34 T.C.M. (CCH) 727 (1975), contingent obligations assumed by partnerships were not always treated as liabilities for federal income tax purposes, within the meaning of section 752 of the Code [3]

---

1. The Internal Revenue Code is codified in Title 26 of the United States Code. Unless otherwise indicated, all references to "section" or "Code" refer to the Internal Revenue Code of 1986, as amended.

2. In this proceeding, Plaintiffs also challenge, *inter alia*, the determinations of the IRS that the subject transactions lacked economic substance and that, for federal income tax purposes, Plain-

tiffs would be disregarded as partnerships and that all transactions engaged in by the purported partnerships would be treated as engaged directly by their purported partners. Such challenges, however, are not the subject of this motion.

3. Section 752 sets forth the general basis rules for partnership liabilities. For instance, section 752(a) states that "[a]ny increase in a partner's share of the liabilities of a partnership, or any

However, the Regulation purportedly encompassed contingent obligations within the meaning of section 752 and retroactively applied this definition to partnership transactions going back to October 18, 1999. The Regulation was purportedly issued under the authority of section 309(c)(1) and (d)(2) of the Community Renewal Tax Relief Act of 2000, Pub.L. No. 106–554, § 309, 114 Stat. 2763A–638 ("2000 Tax Act"). Section 309(c)(1) of the 2000 Tax Act authorized Treasury to enact regulations providing for "appropriate adjustments ... to prevent the acceleration or duplication of losses through the assumption of (or transfer of assets subject to) liabilities described in section 358(h)(3) of [the Code] in transactions involving partnerships." Section 358(h)(3) of the Code defined liability as encompassing both fixed and contingent liabilities.

Plaintiffs argue that Treas. Reg. § 1.752–6 is invalid because (1) the Regulation's retroactive date fails to comply with the statutory limitation on the issuance of retroactive regulations set forth in section 7805(b); (2) the Regulation prescribes rules that fail to carry out Congressional intent in accordance with the two-step test under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); and (3) the Regulation was issued, without good cause, in violation of the notice and comment requirements under the Administrative Procedure Act, 5 U.S.C. § 553 (2006).

For the reasons discussed below, the Court finds that the Regulation is invalid because its retroactive date fails to comply with the statutory bar on retroactive regulations relating to the internal revenue laws of the United States, as provided in section 7805(b). Accordingly, the Regulation is not a legisla-tive regulation entitled to deference under *Chevron*. Further, because section 7805(b) is an express statutory limitation on Treasury's general rulemaking authority relating to the internal revenue laws of the United States, the Regulation also is not a valid interpretive regulation pursuant to its general authority to prescribe regulations. Accordingly, the Court GRANTS Plaintiffs' Motion.

## I. Background[4]

The transactions that are at the heart of this proceeding are complicated. For the purpose of resolving this motion, a simplified summary is provided here. The taxpayers in this case are eight members of the Murphy family. According to Defendant, these transactions purportedly involve a tax shelter product known as "Currency Options Bring Reward Alternatives" ("COBRA"). *See, e.g.,* Joint Prelim. Status Report 10, Sept. 21, 2006. The COBRA transactions took place in tax year ending December 27, 2000. The COBRA transactions required the formation of a number of different entities by or through the Murphy family. These entities included multi-member LLCs, single-member LLCs, and Subchapter S corporations. The multimember LLCs were classified as partnerships for purposes of federal income tax law. Stip. ¶¶ 14, 17, 18, 21, 22, 25. The members of the partnerships are individual members of the Murphy family. Stip. ¶¶ 15, 19, 23. The single-member LLCs are owned by individual members of the Murphy family and are the vehicles through which they made contributions of capital to the partnerships. Stip. ¶¶ 26, 27, 30, 31, 34, 35, 38, 39, 42, 43, 46, 47, 50, 51, 54, 55. Each of the single member LLCs was, for federal income tax purposes, "disregarded as an entity sepa-

---

increase in a partner's individual liabilities by reason of the assumption by such partner of partnership liabilities, shall be treated as a contribution from the partner to the partnership." I.R.C. § 752(a). Conversely, section 752(b) states that "[a]ny decrease in a partner's share of the liabilities of a partnership or any decrease in a partner's individual liabilities by reason of the assumption by the partnership of such individual liabilities, shall be treated as a distribution from the partnership to the partner." I.R.C. § 752(b).

4. This background is derived in part from the parties' Joint Supplemental Stipulation of Facts ("Stip."), filed on February 17, 2009. The Court is very appreciative of the hard work of counsel in producing this set of stipulations. The stipulation describes documents using their formal labels, such as the terms "partner" and "partnership," even though Defendant contends in some instances that those labels did not reflect the realities of the transactions at issue in this proceeding.

rate from its owner" under Treas. Reg. § 301.7701–3(b)(1)(ii). Stip. ¶¶ 29, 33, 37, 41, 45, 49, 53, 57. Accordingly, both the individual members of the Murphy family and their corresponding single-member LLCs have been characterized as "partners" in the partnerships. The shareholders of the Subchapter S corporations are the same individual members of the Murphy family who are members of the partnerships to which the Subchapter S corporations correspond. Stip. ¶¶ 9, 11, 13.

Each member of the Murphy family, through his single-member LLCs, purchased and sold long and short "put" options, respectively. Stip. ¶¶ 58–71. More specifically, they obtained European-style foreign currency option positions on the Euro or Swiss Franc. These option positions were subsequently transferred as contributions of capital to the partnerships. Stip. ¶¶ 72, 75, 78. The members of the Murphy family took the position that, as a result of the contribution of the option positions, their outside bases in the partnerships were increased by the cost basis of their purchased long options without any reduction for any obligation underlying the sold short options. Stip. ¶¶ 73, 76, 79. Consequently, the partnerships did not reduce the bases of the purchased options contributed by the amount of any obligation underlying the sold options contributed. Stip. ¶¶ 74, 77, 80.

The options then expired in accordance with their terms. Stip. ¶ 81. After the expiration of the options, the partnerships acquired additional assets. Stip. ¶¶ 82–84. Two partnerships received additional contributions of capital from their partners in the form of North Carolina municipal bonds. One partnership invested in Euros. Subsequently, all of the members of the Murphy family contributed all of their interests in the partnerships to the corresponding Subchapter S corporations. Stip. ¶¶ 85, 87, 89. As a result of these contributions, the partnerships liquidated for federal income tax purposes, distributing all of the remaining assets to the Subchapter S corporations. Stip. ¶¶ 86, 88, 90. The Subchapter S corporations then sold the remaining assets to unrelated third parties, generating for each a loss (cap-

ital or ordinary as the case may be) for federal income tax purposes. Stip. ¶¶ 91, 93, 95. The Subchapter S corporations reported this loss on their Forms 1120S for tax year 2000 and allocated the loss among their shareholders according to their respective interests in the corporations. Stip. ¶¶ 92, 94, 96.

On December 15 and 16, 2005, the IRS issued an FPAA to each of the partnerships. Each FPAA made the following determination with regard to the Murphy family members' position that they did not need to reduce their bases in the partnerships by the obligations underlying the sold short options that they contributed to the partnership:

> It is determined that the obligations under the sold option positions transferred to [the partnership] constitute liabilities for purposes of Treasury Regulation § 1.752–6, the assumption of which by [the partnership] shall reduce the purported partners' bases in [the partnership].

Stip. ¶¶ 98, 100, 102.

## II. Standard of Review

Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"), like its counterpart in the Federal Rules of Civil Procedure, provides that "[a] motion for summary judgment should be granted if ... there is no genuine issue as to any material fact and ... the movant is entitled to judgment as a matter of law." RCFC 56(c)(1); *see also Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed.Cir.1987) (citing Fed.R.Civ.P. 56). Further, Rule 56 also provides that "[a] party claiming relief may move, with or without supporting affidavits, for summary judgment on ... part of the claim." RCFC 56(a).

## III. Discussion

### A. The Promulgation of the Regulation

As explained above, the taxpayers operating through single-member LLCs maintain that each partner's respective basis in the partnerships was increased by the cost basis of the purchased options without any reduction in basis for any obligation underlying the sold options. Accordingly, the purported

partnerships did not reduce the bases of the purchased options contributed by the amount of any obligation underlying the sold options contributed. When a partner contributes property to a partnership in exchange for an interest in the partnership, no gain or loss is recognized on the transaction. I.R.C. § 721(a). The Code provides that, for federal income tax purposes, a partner's "basis of an interest in a partnership acquired by a contribution of property, including money, to the partnership shall be the amount of such money and the adjusted basis of such property to the contributing partner at the time of the contribution." I.R.C. § 722. An assumption of a partner's liabilities by a partnership requires a reduction in the partner's respective basis in the partnership. I.R.C. § 752(b). Plaintiffs argue that the sold short options were contingent obligations, meaning that they created no obligation unless and until they were exercised, and the amount of the potential liability associated with the short options could not be determined unless and until they were exercised. Pls.' Mem. in Support of their Mot. for Partial Summ. J. 9, Mar. 7, 2008. Thus, so the Plaintiffs' argument goes, because there was no fixed "obligation" at the time the single-member LLCs contributed the sold short options to the partnerships, such options were not "liabilities" within the meaning of I.R.C. § 752, thus not requiring a reduction in their respective bases in the partnerships for any contingent obligation underlying the sold short options.

At the time that Plaintiffs entered into the transactions at issue in this proceeding, there was no statutory or regulatory definition of "liability" as the term was used in the partnership context of section 752. However, at that time there was a line of decisional authority from the United States Tax Court beginning with *Helmer v. Commissioner*, 34 T.C.M. (CCH) 727 (1975), which adopted the position advanced by the IRS that under I.R.C. § 752, contingent obligations, including short option positions, were not "liabilities" within the meaning of that statute, on the grounds that "[t]he option agreement . . . created no liability on the part of the part-

nership to repay the funds paid nor to perform any services in the future." *Id.* at 731. The effect of this decision was that a partnership's assumption of a short option position had no effect on a partner's basis in the partnership. This holding was followed in subsequent decisions of the Tax Court. *Long v. Comm'r*, 71 T.C. 1, 1978 WL 3318 (1978); *LaRue v. Comm'r*, 90 T.C. 465, 1988 WL 23562 (1988). These decisions provide the basis for Plaintiffs' contention that at the time the partners contributed their option positions to the partnerships, Plaintiffs did not have to reduce the partners' bases in the partnerships by the amount of any obligation underlying the sold short options.

However, on June 24, 2003, several years after the contribution (and expiration) of the short options by the single-member LLCs to the partnership, Treasury issued Temp. Treas. Reg. § 1.752–6T, titled "Partnership assumption of partner's section 358(h)(3) liability after October 18, 1999, and before June 24, 2003 (temporary)." *See* Assumption of Partner Liabilities, 68 Fed. Reg. 37,414, 37,-416–17 (June 24, 2003). This temporary regulation was issued ostensibly under the authority of section 309(c) and (d)(2) of the 2000 Tax Act. *Id.* at 37,415. On May 26, 2005, the temporary regulation became final, and Treasury directed that the final regulation would apply to assumptions of liabilities occurring after October 18, 1999 and before June 24, 2003, i.e., retroactively. Assumption of Partner Liabilities, 70 Fed. Reg. 30,334, 30,335 (May 26, 2005).

Specifically, the Regulation provides, in relevant part, that:

> If, in a transaction described in section 721(a), a partnership assumes a liability (defined in section 358(h)(3)) of a partner (other than a liability to which section 752(a) and (b) apply) . . . the partner's basis in the partnership is reduced (but not below the adjusted value of such interest) by the amount (determined as of the date of the exchange) of the liability.

Treas. Reg. § 1.752–6(a).[5] Thus, the Regulation requires a partner, in a transaction de-

---

5. In addition, Treas. Reg. § 1.752–7, which was first published in a Notice of Proposed Rulemak-

ing issued the same day as Treas. Reg. § 1.752–6T, sets forth the definition of partnership liabili-

scribed in section 721(a), which pertains to the non-recognition of a gain or loss on the contribution of property to a partnership in exchange for an interest in the partnership, to reduce his interest (or basis) in the partnership by the amount of any liability, as defined in section 358(h)(3), that the partnership assumes. Section 358(h)(3) sets forth the rule governing the assumption of liabilities in an exchange or series of exchanges between a corporation not already covered by section 358(d) (discussed in further detail below) and its shareholders. It defines liability to "include any fixed or *contingent obligation* to make payment, without regard to whether the obligation is otherwise taken into account for purposes of this title." I.R.C. § 358(h)(3) (emphasis added).

### B. Retroactive Application of Regulations Pertaining to the Code

Section 7805(a) of the Code authorizes the Secretary of the Treasury ("Secretary") to promulgate rules and regulations in connection with the enforcement of the Code. It states:

> (a) Authorization.—Except where such authority is expressly given by this title to any person other than an officer or employee of the Treasury Department, the Secretary shall prescribe all needful rules and regulations for the enforcement of this title, including all rules and regulations as may be necessary by reason of any alteration of law in relation to internal revenue.

I.R.C. § 7805(a). Notwithstanding this general authorization to promulgate rules and regulations, Congress has specifically prohibited the Secretary, with certain exceptions, from giving retroactive effect to regulations that he issues pertaining to the Code. I.R.C. § 7805(b)(1). Section 7805(b)(1) of the Code provides:

> (1) In general.—Except as otherwise provided in this subsection, no temporary, proposed, or final regulation relating to the internal revenue laws shall apply to any

taxable period ending before the earliest of the following dates:

> (A) The date on which such regulation is filed with the Federal Register.

> (B) In the case of any final regulation, the date on which any proposed or temporary regulation to which such final regulation relates was filed with the Federal Register.

> (C) The date on which any notice substantially describing the expected contents of any temporary, proposed, or final regulation is issued to the public.

I.R.C. § 7805(b)(1)(A)-(C).

This statutory limitation on retroactivity was enacted by Congress in 1996 as part of the Taxpayer Bill of Rights 2. Taxpayer Bill of Rights 2, Pub.L. No. 104–168, § 1101(a), 111 Stat. 1452. This limitation amended the prior version of section 7805(b), which gave Treasury the discretion to give retroactive effect to regulations promulgated under the Code. The former section 7805(b) read: "The Secretary may prescribe the extent, if any, to which any ruling or regulation, relating to the internal revenue laws, shall be applied without retroactive effect." I.R.C. § 7805(b) (1994) (superseded). The current section 7805(b), as amended by the Taxpayer Bill of Rights 2, took effect "with respect to regulations which relate to statutory provisions enacted on or after the date of the enactment of this Act," which was July 30, 1996. Taxpayer Bill of Rights 2 § 1101(b).

In promulgating the Regulation, Treasury claimed that the Regulation satisfied two exceptions to section 7805(b) bar on retroactivity. I.R.C. § 7805(b). First, it claimed that the Regulation satisfies section 7805(b)(6) which permits retroactive application of regulations "by a legislative grant from Congress authorizing the Secretary to prescribe the effective date with respect to any regulation." Second, Treasury claimed that the regulation satisfies section 7805(b)(3), which states that "[t]he Secretary may provide that any regulation may take effect or apply ret-

---

ty encompassed by section 752 that would apply prospectively, i.e., for transactions occurring after June 24, 2003. *See* Assumption of Partner Liabilities, 68 Fed. Reg. 37,434 (June 24, 2003). In the Notice of Proposed Rulemaking issued in

connection with § 1.752–7, Treasury stated that the IRS would not follow *Helmer*. *See id.* at 37,436 ("The definition of a liability contained in these proposed regulations does not follow *Helmer* ....").

roactively to prevent abuse." Assumption of Partner Liabilities, 70 Fed. Reg. 30,334, 30,-337 (May 26, 2005). Defendant argues that the Regulation satisfies both exceptions to the bar on retroactive application. Finally, Defendant argues that, even if there is no specific legislative grant of authority to issue the Regulation, the Regulation is, nevertheless, an interpretive regulation authorized by Treasury's general rulemaking authority under section 7805(a), and, as such, is due full deference and is to be given full effect under *Chevron.* The Court will examine each argument in turn.

1. Is Treas. Reg. § 1.752–6 Authorized by a Legislative Grant of Authority Under Section 309(c) of the 2000 Tax Act?

Defendant argues that section 309(c) of the 2000 Tax Act was the legislative grant that authorized Treasury to promulgate the Regulation and apply it retroactively. Section 309 of the 2000 Tax Act is entitled, "Prevention of Duplication of Loss Through Assumption of Liabilities Giving Rise to a Deduction." To understand section 309(c) of the 2000 Act, which pertains to partnerships, an explanation of section 309(a), which pertains to corporations, is required first. Section 309(a) of the 2000 Tax Act amended section 358 of the Code, which pertains to "basis to distributees" of corporations, by adding a new subsection (h) entitled, "Special Rules for Assumption of Liabilities To Which Subsection (d) Does Not Apply." Section 358(d)(1) sets forth the rule that a shareholder is to reduce his basis in corporate stock when the corporation assumes a shareholder's liability. "Where, as part of the consideration to the taxpayer, another party to the exchange assumed a liability of the taxpayer, such assumption shall, for purposes of this section, be treated as money received by the taxpayer on the exchange." I.R.C. § 358(d)(1). However, before the enactment of section 358(h), not all liabilities assumed by a corporation were treated as liabilities

encompassed within the scope of section 358(d)(1). As explained in a report by the Joint Committee on Taxation entitled, "General Explanation of Tax Legislation Enacted in the 106th Congress" ("Joint Committee Report"), such contingent liabilities included:

assumptions of liabilities that would give rise to a deduction, provided the incurrence of such liabilities did not result in the creation or increase of basis of any property. The assumption of such liabilities is not treated as money received by the transferor in determining whether the transferor has gain on the exchange. Similarly, the transferor's basis in the stock of the controlled corporation is not reduced by the assumption of such liabilities.

Staff of J. Comm. on Taxation, 107th Cong., *General Explanation of Tax Legislation Enacted in the 106th Congress* 154 (J. Comm. Print 2001).[6] An example of an assumption of liabilities by a corporation that would not result in a reduction in the basis of the shareholder included certain contingent liabilities for soil and groundwater remediation. *Id.* (citing Rev. Rul. 95–74, 1995–2 C.B. 36). However, Congress recognized that, by not reducing a shareholder's basis in a corporation which has, in an exchange or series of exchanges, assumed certain of his liabilities giving rise to a deduction, there was a risk that taxpayers might enter into transactions which accelerated or duplicated deductions through an assumption of these kinds of liabilities. "The Congress was concerned about a type of transaction in which taxpayers seek to accelerate, and potentially duplicate, deductions involving certain liabilities." *Id.*

Thus, in enacting section 309(a) of the 2000 Tax Act, Congress sought to ensure that assumptions of contingent obligations would be treated as assumptions of liabilities in any exchange or series of exchanges between a corporation and its shareholders. Accordingly, section 358(h)(1), newly codified by section 309 of the 2000 Tax Act, provides for a reduction in a shareholder's basis in corporate stock by the amount of "any liability . . .

---

**6.** *See also* I.R.C. § 357(c)(3) (exclusion of a transfer of a liability by a controlling shareholder to a corporation, the payment of which gives rise to a deduction, from the determination of the amount of liabilities assumed, except when the incur-

rence of the liability results in the creation of, or increase in, the basis of any property). Section 358(d)(2) specifically excepted liabilities described in section 357(c)(3) from the basis-reduction rule in section 358(d)(1).

which is assumed by another person" in "an exchange or series of exchanges" between a corporation and its shareholders with respect to which the general basis-reduction rule of subsection (d)(1) does not apply. The definition of "liability" pertaining to I.R.C. § 358(h)(1) is provided in section 358(h)(3), which states that "[f]or the purposes of *this subsection*, the term 'liability' shall include any fixed or contingent obligation to make payment, without regard to whether the obligation is otherwise taken into account for purposes of this title." I.R.C. § 358(h)(3) (emphasis added). However, "this subsection" only refers to subsection (h) and thus, in of itself, only concerns assumptions of liabilities in a corporate exchange and not transactions between a partner and a partnership.

Because section 309(a) of the 2000 Tax Act, as such, concerns the assumption of liabilities by corporations, it does not apply directly to the transactions at issue in this proceeding. However, subsection (c) of section 309 addresses the assumption of liabilities by partnerships and S corporations and is, thus, the provision that ostensibly applies to the disputed transactions here. Section 309(c) provides, in relevant part:

Application of Comparable Rules to Partnerships and S Corporations.

The Secretary of the Treasury or his Delegate—

(1) shall prescribe rules which provide appropriate adjustments under subchapter K of chapter 1 of the Internal Revenue Code of 1986 [the portion of the Code pertaining to income tax treatment of partners and partnerships] *to prevent the acceleration or duplication of losses* through the assumption of (or transfer of assets subject to) liabilities described in section 358(h)(3) of such Code (as added by subsection (a)) in transactions involving partnerships....

2000 Tax Act § 309(c)(1) (emphasis added). *See also* Staff of J. Comm. on Taxation, 107th Cong., *General Explanation of Tax Legislation Enacted in the 106th Congress* (J. Comm. Print 2001) at 155 ("The Secretary of the Treasury Secretary is directed to prescribe rules providing appropriate adjust-ments *to prevent the acceleration or duplication of losses* through the assumption of liabilities (as defined in the provision) in transactions involving partnerships.") (emphasis added). Subsection (d)(2) of section 309 permits application of these rules to "assumptions of liability" dated after October 18, 1999. Importantly, however, section 309(c) of the 2000 Tax Act did not change the Code's basis rules for partnership liability in section 752 so as to encompass contingent liabilities within its scope as section 309(a) of the 2000 Tax Act did in the corporate context by adding section 358(h)(3) to the Code.

Several courts have opined on whether the Regulation is authorized by section 309(c). First, in *Klamath Strategic Investment Fund, LLC v. United States*, 440 F.Supp.2d 608, 622 (E.D.Tex.2006), the Regulation was held to have exceeded the legislative grant of authority of section 309. Similar holdings were made in the U.S. District Court for the District of Colorado in *Sala v. United States*, 552 F.Supp.2d. 1167, 1199–1201 (D.Colo. 2008), and by Judge Christine Miller in this Court in *Stobie Creek Investments v. United States*, 82 Fed.Cl. 636, 667–71 (2008). In contrast, two courts have upheld the Regulation as encompassed within the grant of legislative authority under section 309. *See Cemco Investors, LLC v. United States*, 515 F.3d 749 (7th Cir.2008); *Maguire Partners–Master Invs., LLC v. United States*, Nos. 06–07371, 06–0774, 06–7376, 06–7377, 06–7380, 2009 WL 279100 (C.D.Cal. Feb.4, 2009) (same as *Cemco*).

Regulations that have been promulgated in accordance with Congressional grant of authority are "legislative" regulations and accorded "controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 844, 104 S.Ct. 2778. In determining whether the Regulation is a legislative regulation authorized by Congress, the Court must first inquire whether Congress has directly spoken to the precise question at issue. If Congress has, then that is the end of the matter "for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43,

104 S.Ct. 2778. If the statute is silent or ambiguous, however, the Court defers to the agency's interpretation so long as it is based upon a "permissible construction of the statute." *Id.* at 843, 104 S.Ct. 2778.

■ As the Court's analysis above demonstrates, section 309(c) of the Tax Act of 2000 only authorized Treasury to prescribe rules, with retroactive effect, that provide adjustments, i.e., a reduction in a partner's outside basis in the partnership, to transactions involving the assumption of liabilities (fixed or contingent) by a partnership in "an exchange or series of exchanges" with a partner where *losses are accelerated or duplicated.* "[A] loss is 'accelerated' when the taxpayer sells the stock in the transferee entity for a reduced price that reflects the losses that would otherwise be realized by satisfying the contingent liability in the normal course of business." *Sala,* 552 F.Supp.2d at 1200 (citing *Joint Committee Report* at 154). Likewise, "[a] loss is 'duplicated' when the transferee entity takes a deduction in addition to the deduction realized when the taxpayer sells his stock in the transferee entity at a loss." *Id.*

■ In its Order requesting supplemental briefing, dated September 25, 2008, the Court specifically asked the parties to explain how the tax losses in this proceeding are duplicative. In its supplemental brief, Defendant argued that the losses in these transactions are duplicative because the loss occurred once at the partnership level when the options expired or terminated and occurred a second time when the S corporations sold their assets whose allegedly artificially inflated bases were derived from the fact that the single-member LLCs did not reduce their bases by the cost of the sold short options.[7] However, the Court does not find Defendant's argument convincing. Partnerships are pass-through entities, so there is only one loss that would have had tax consequences for the Government. Defendant's argument that the losses are "duplicative" is ultimately a cosmetic re-framing of its argument that Plaintiffs' transactions created "artificially inflated bases" in the S cor-

porations. *See* Def.'s Opp'n 31, Apr. 21, 2008; Def.'s Supplemental Br. 3, Oct. 15, 2008. Losses from transactions, such as the ones that Plaintiffs entered into, that were the result of what Defendant characterizes as "artificially-inflated bases," do not fit into the category of either "duplicative" or "accelerated" losses. As Judge Christine Miller observed in *Stobie Creek,* "The mandate of Congress to the Treasury in Section 309(c)(1), however, was not to combat inflation of basis—artificial or otherwise—rather, to preclude the acceleration and/or duplication of losses." *Stobie Creek,* 82 Fed.Cl. at 670. Congress did not authorize Treasury to require a reduction in a partner's interest in a partnership when the partnership assumes the partner's contingent liability, no matter whether losses are duplicated or accelerated. Nevertheless, *all* such transactions are encompassed by the Regulation.

Moreover, section 309(c) authorized Treasury to prescribe regulations pertaining to "the assumption of liabilities described in section 358(h)(3) ... in transactions involving partnerships." As stated above, section 358(h)(3) provides that "for purposes of this subsection" the term "liability" includes contingent liabilities. However, as also explained above, the "subsection" referenced in section 358(h)(3) refers only to subsection (h) and thus, in of itself, only relates to contingent liabilities assumed in an exchange between a corporation and its shareholders. As the *Sala* court observed:

> Because § 358(h)(3) applies only to liabilities that are assumed in an exchange or series of exchanges between a corporation and its shareholders, the language in § 309(c)(1) authorizing Treasury to issue regulations relating to "the assumption of liabilities described in section 358(h)(3) ... in transactions involving partnerships" only authorized the Treasury to issue regulations involving transactions between a corporation and a partnership.... The regulation at issue here, however, applies to any transaction where a partner contributes property to a partnership in exchange for an interest in that partnership and where the partnership assumes a contin-

7. Defendant does not argue that any losses were accelerated.

gent liability of the partner-even if no corporation is involved.

*Sala*, 552 F.Supp.2d at 1200–01.

*Cemco* upheld the validity of the regulation as authorized by section 309 of the 2000 Tax Act solely because the retroactive date of the Regulation, October 18, 1999, was identical to the date authorized by section 309. *Cemco*, 515 F.3d at 752. However, the mere fact that the dates are the same does not answer the question of whether section 309 authorizes a reduction of a partner's outside basis in the partnerships in the absence of duplication or acceleration of losses, a line of inquiry that *Cemco* did not consider. Presumably, the *Cemco* court gave short shrift to (more accurately, scornfully rejected) the plaintiff's arguments about the retroactive effect of the Regulation because the transactions before them in fact lacked economic substance.

Thus, in promulgating the Regulation, Treasury manifestly exceeded Congress' authorization of retroactivity in section 309, and thus the retroactive application of the expanded definition of liability to Plaintiffs' transactions cannot be considered authorized by a legislative grant from Congress. "The lack of correspondence in the reach of the Treasury Regulation relative to the statutory mandate is apparent." *Stobie Creek*, 82 Fed. Cl. at 670. Because the Regulation exceeds the scope of the specific legislative grant from Congress in section 309(c), the Regulation cannot be considered a legislative regulation which, under *Chevron*, would be due considerable deference.

2. Is Retroactive Application of Treas. Reg. § 1.752–6 Appropriate in Order to Prevent Abuse, in Accordance with I.R.C. § 7805(b)(3)?

■ Defendant argues that section 7805(b)(3) grants Treasury the authority to retroactively encompass contingent liabilities within the definition of partnership liability in order "to prevent abuse." "Regulations issued under Section 7805(b)(3) are necessar-

ily interpretive." *Sala*, 552 F.Supp.2d at 1201 (citing *Klamath*, 440 F.Supp.2d at 621). Unfortunately, "abuse" is not defined by the statute. Nevertheless, several courts, cited by the parties, have examined whether § 1.752–6 is appropriately applied retroactively to prevent abuse. *Sala*, *Klamath*, and *Stobie Creek* all rejected the contention that retroactivity was appropriate under the "abuse" exception. *Sala*, 552 F.Supp.2d at 1201–03; *Klamath*, 440 F.Supp.2d at 623–25 (evaluating the reasonableness of the retroactive effect of the Regulations in accordance with factors pertaining to superceded section 7805(b), as set forth in *Snap–Drape, Inc. v. Comm'r*, 98 F.3d 194, 202 (5th Cir.1996)); *Stobie Creek*, 82 Fed.Cl. at 671. *Cemco*, cited approvingly by Defendant, upheld the regulation under the anti-abuse exception on the grounds that "all the regulation does is instantiate the preexisting norm that transactions with no economic substance don't reduce people's taxes." *See Cemco*, 515 F.3d at 752.

As explained above, *Maguire Partners*, also cited by Defendant, agreed with *Cemco* that the Regulation should be applied retroactively. *Maguire Partners* further justified retroactive application of the Regulation in a convoluted argument by pointing to an assertion in the Notice of Proposed Rulemaking of Treas. Reg. § 1.752–7, which states, "[C]ase law and revenue rulings [specifically Revenue Ruling 88–77 [8]], however, have established that, as under section 357(c)(3), the terms [sic] liabilities [under 752] does not include liabilities the payment of which would give rise to a deduction, unless the incurrence of the liability resulted in the creation of, or increase in, the basis of property." *Maguire Partners*, 2009 WL 279100 at * 19 (quoting Assumption of Partner Liabilities, 68 Fed. Reg. 37,434, 37,435 (June 24, 2003)). Therefore, according to *Maguire Partners*, in enacting the Regulation, "the Treasury Department simply applied the pre-existing rule contained in Revenue Ruling 88–77 to address the possibility of abuse caused by con-

---

**8.** Revenue Ruling 88–77 states, in relevant part, "For purposes of section 752 of the Code, the terms 'liabilities of a partnership' and 'partnership liabilities' include an obligation only if and to the extent that incurring the liability creates or

increases the basis to the partnership of any of the partnership's assets (including cash attributable to borrowings), gives rise to an immediate deduction to the partnership...." Rev. Rul. 88–77, 1988–2 C.B. 128 (quotation marks altered).

tingent liabilities not being recognized under I.R.C. § 752." *Id.* Thus, so *Maguire Partners* seems to hold, retroactive application of the Regulation is justified by the fact that a partner's liability assumed by a partnership which both gives rise to a deduction and increases his basis in the partnership would have been encompassed within the definition of liability under section 752 even before the promulgation of the Regulation.

The Court does not find Defendant's citations to these cases to be convincing. In the first instance, the Court notes that, unlike in *Cemco,* the question of whether the transactions at the heart of this case lack economic substance has yet to be determined. Moreover, the *Sala* court found that the transaction before it had economic substance. Therefore, it is possible, at least in theory, that transactions in which a partnership assumes the liabilities of a partner without a corresponding reduction in the partner's outside basis could likewise have economic substance. *Sala,* 552 F.Supp.2d at 1185–86.

 Moreover, the arguments of both *Cemco* and *Maguire Partners* simply do not come to grips with the fact that when the final version of the Regulation was promulgated, Treasury specified that the type of abuse that the Regulation was designed to prevent was "the same type[ ] of abuse[ ] that section 358(h) was designed to deter." Assumption of Partner Liabilities, 70 Fed. Reg. at 30,335. As explained above, the Regulation encompasses the assumption of any contingent liability of a partner in the definition of partnership liability. However, the basis rule in section 358(h) only applies to liabilities that are assumed in exchanges between a corporation and its shareholders, and the 2000 Tax Act did not direct a corresponding change to the basis rules in the partnership context as found in section 752. As *Sala* held, "[A] Treasury regulation that conflicts with the underlying statute is invalid, even if cast as an anti-abuse regulation." *Sala,* 552 F.Supp.2d at 1202. Moreover, *Maguire Partners'* assertion that the promulgation of the Regulation did not constitute a change in the definition of partnership liability is disputable in light of the fact that the *Helmer* line of cases specifically upheld the IRS's

position that options are excluded from the calculation of a partner's basis in the partnership. The issue of whether Plaintiffs were in fact entitled to rely on the *Helmer* line of cases when they entered into the COBRA transactions has not yet been determined. But even if *Maguire Partners'* interpretation of the definition of partnership liability set forth above is ultimately correct, that does not change the fact that, as explained above, "[t]he mandate of Congress to the Treasury in Section 309(c)(1) . . . was not to combat the inflation of basis—artificial or otherwise—rather, to preclude the acceleration and/or duplication of losses." *Stobie Creek,* 82 Fed.Cl. at 670. The Regulation exceeds that mandate.

Accordingly, the Regulation does not satisfy the anti-abuse exception to retroactivity.

3. Is the Regulation Valid as an Interpretive Regulation Under the General Rulemaking Authority of I.R.C. § 7805(a)?

 Defendant proffers a last-ditch argument that the Regulation may be upheld as an interpretive regulation under the general rulemaking authority of section 7805(a). Interpretive regulations promulgated under section 7805(a) are afforded a lower level of deference than legislative regulations but "are upheld if they implement the congressional mandate in a reasonable manner." *Schuler Indus. Inc. v. United States,* 109 F.3d 753, 754–55 (Fed.Cir.1997) (citing *Nat'l Muffler Dealers Ass'n v. United States,* 440 U.S. 472, 476, 99 S.Ct. 1304, 59 L.Ed.2d 519 (1979)). "In determining whether a particular regulation carries out the congressional mandate in a proper manner, we look to see whether the regulation harmonizes with the plain language of the statute, its origin, and its purpose." *Nat'l Muffler Dealers Ass'n,* 440 U.S. at 477, 99 S.Ct. 1304. The Court finds that the Regulation does not "harmonize with the plain language of the statute" authorizing the Secretary to "prescribe all needful rules and regulations for the enforcement of this title." It is clear that the 1996 revision of section 7805(b) under the Tax Payer Bill of Rights 2 functions as an express bar on the authority of the Secretary

to give retroactive effect to regulations issued under its general rulemaking authority under section 7805(a). "Except as otherwise provided in this subsection, no temporary, proposed, or final regulation relating to the internal revenue laws shall apply to any taxable period ending before the earliest of the following dates...." I.R.C. § 7805(b). Moreover, section 7805(b) enumerates specific exceptions to the statutory bar on retroactivity. As section 7805(b) is an express statutory limitation on its rulemaking authority under section 7805(a), Defendant cannot appeal to section 7805(a) as a basis for giving retroactive effect to any regulation other than by means of the exceptions set forth in section 7805(b). *New Millennium Trading LLC v. United States*, No. 3439–06, 131 T.C. No. 18, 2008 WL 5330490 (Dec. 22, 2008), which Defendant cites as authority for upholding the Regulation as a valid interpretive regulation under section 7805(a), involved neither the regulation at bar nor any regulation that had been given retroactive effect.

## IV. Conclusion

The Court holds that Treas. Reg. § 1.752–6 is invalid because the Regulation does not satisfy any exception to the statutory bar on retroactive application of regulations relating to the internal revenue laws under I.R.C. § 7805(b). Accordingly, Plaintiffs' Motion for Partial Summary Judgment is GRANTED.

The Court ORDERS that a joint status report on further proceedings in this case be submitted within fourteen days of the date of entry of this Opinion. The joint status report shall include three mutually agreeable dates on which this Court may hold a status conference.