# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 23, 2014

No. 10-41219

Lyle W. Cayce
Clerk

NPR INVESTMENTS, L.L.C., by and through Nelson Roach, a Partner other than the Tax Matters Partner,

> Plaintiff–Appellee
> Cross–Appellant,

HAROLD W. NIX; CHARLES C. PATTERSON,

> Intervenor Plaintiffs–Appellees,

v.

UNITED STATES OF AMERICA,

> Defendant–Appellant
> Cross–Appellee.

---

Appeals from the United States District Court
for the Eastern District of Texas

---

Before DENNIS, CLEMENT, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

In a Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA")[1] partnership proceeding, the district court held that valuation misstatement and substantial understatement tax penalties were inapplicable to NPR

---

[1] Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 324 (codified as amended at 26 U.S.C. §§ 6221-6234 (2012)).

No. 10-41219

Investments, LLC (NPR). The United States appeals those determinations. The district court also held that a notice of a Final Partnership Administrative Adjustment (FPAA) issued by the Internal Revenue Service (IRS) to NPR, which made adjustments to NPR's tax return and could result in additional tax liabilities to some of the partners, was valid. NPR, by and through one of its partners, Nelson J. Roach, and two of NPR's other partners, Harold W. Nix and Charles C. Patterson, cross-appeal that holding. We will refer to Nix, Patterson, and Roach, collectively, as the Taxpayers.

We conclude that, in this partnership-level proceeding, (1) valuation misstatement penalties under 26 U.S.C. § 6662(e) and (h) are applicable; (2) a substantial underpayment penalty under 26 U.S.C. § 6662(d) is applicable because there was no substantial authority for the tax treatment of the transactions at issue; (3) NPR failed to carry its burden of establishing a reasonable-cause defense under 26 U.S.C. § 6664; and (4) the Taxpayers' respective, individual reasonable-cause defenses under 26 U.S.C. § 6664 are partner-level defenses that the district court did not have jurisdiction to consider. We accordingly affirm the district court's judgment regarding the finality of the FPAA, reverse the district court's judgment regarding the valuation misstatement and substantial underpayment penalties, reverse the district court's judgment regarding NPR's reasonable-cause defense, and vacate the district court's judgment regarding the Taxpayers' reasonable-cause defenses.

**I**

Harold Nix, Charles Patterson, and Nelson Roach are partners in the law firm of Nix, Patterson & Roach, LLP. They represented the State of Texas in litigation against the tobacco industry and in 1998 were awarded a fee of approximately $600 million that is to be paid over a period of time. They also received fees totaling approximately $68 million in connection with tobacco

No. 10-41219

litigation in Florida and Mississippi.  Nix, Patterson, and Roach share the fees 40%, 40%, and 20%, respectively.

Nix and Patterson have participated in at least two "Son-of-BOSS" tax shelters.  BOSS stands for "Bond and Options Sales Strategy."[2]  Courts, including our court and the district court in this case,[3] have described a Son-of-BOSS transaction as "a well-recognized 'abusive' tax shelter."[4]  Artificial losses are generated for tax deduction purposes.

Before creating NPR and engaging in the transactions at issue in this appeal, Nix and Patterson invested in another Son-of-BOSS tax shelter, known as BLIPS.  It involved sham bank loans, and our court considered various tax issues related to Nix's and Patterson's transactions with regard to that shelter in *Klamath Strategic Investment Fund ex rel. St. Croix Ventures v. United States*.[5]

In August 2000, after the investment in BLIPS but before NPR was formed, the IRS issued a notice that it considered Son-of-BOSS transactions, including BLIPS, abusive and that deductions for artificial losses generated from such transactions would not be permitted.  The Notice, IRS Notice 2000-44, states:

> In another variation [of transactions generating losses through artificially high bases], a taxpayer purchases and writes options and purports to create substantial positive basis in a

[2] *Am. Boat Co. v. United States*, 583 F.3d 471, 474 (7th Cir. 2009); *Kligfeld Holdings v. Comm'r*, 128 T.C. 192, 194 (2007).

[3] *NPR Invs., LLC, ex rel. Roach v. United States*, 732 F. Supp. 2d 676, 679 n.3 (E.D. Tex. 2010).

[4] *Nev. Partners Fund, L.L.C. ex rel. Sapphire II, Inc. v. United States*, 720 F.3d 594, 605 (5th Cir. 2013) (citing *Bemont Invs., L.L.C. ex rel. Tax Matters Partner v. United States*, 679 F.3d 339, 342, 344 (5th Cir. 2012)); *see also 106 Ltd. v. Comm'r*, 684 F.3d 84, 86 (D.C. Cir. 2012); *Desmet v. Comm'r*, 581 F.3d 297, 299 (6th Cir. 2009).

[5] 568 F.3d 537 (5th Cir. 2009).

partnership interest by transferring those option positions to a partnership. For example, a taxpayer might purchase call options for a cost of $1,000X and simultaneously write offsetting call options, with a slightly higher strike price but the same expiration date, for a premium of slightly less than $1,000X. Those option positions are then transferred to a partnership which, using additional amounts contributed to the partnership, may engage in investment activities.

Under the position advanced by the promoters of this arrangement, the taxpayer claims that the basis in the taxpayer's partnership interest is increased by the cost of the purchased call options but is not reduced under § 752 as a result of the partnership's assumption of the taxpayer's obligation with respect to the written call options. Therefore, disregarding additional amounts contributed to the partnership, transaction costs, and any income realized and expenses incurred at the partnership level, the taxpayer purports to have a basis in the partnership interest equal to the cost of the purchased call options ($1,000X in this example), even though the taxpayer's net economic outlay to acquire the partnership interest and the value of the partnership interest are nominal or zero. On the disposition of the partnership interest, the taxpayer claims a tax loss ($1,000X in this example), even though the taxpayer has incurred no corresponding economic loss.

The purported losses resulting from the transactions described above do not represent bona fide losses reflecting actual economic consequences as required for purposes of § 165. The purported losses from these transactions (and from any similar arrangements designed to produce noneconomic tax losses by artificially overstating basis in partnership interests) are not allowable as deductions for federal income tax purposes.[6]

In 2001, the Taxpayers consulted with their CPA, Sid Cohen, with whom they had a longstanding professional relationship, about investing in foreign currency. Cohen introduced the Taxpayers to Diversified Group, Inc. (DGI) in the summer of 2001. Cohen arranged and attended a meeting with DGI in October 2001 at which Patterson was also present. DGI explained its

---

[6] I.R.S. Notice 2000-44, 2000-2 C.B. 255.

investment opportunity, which involved the purchase, and contribution to a partnership, of offsetting foreign, European-style currency options.[7] This offsetting-option shelter was called "OPS" (Option Partnership Strategy). The structure of the investment was similar to that described in and prohibited by Notice 2000-44. Cohen characterized the options as high-risk from the standpoint of an investment for profit, but said that Patterson and his partners had the "potential to make a lot of money on it" if the options "hit the sweet spot." "Hitting the sweet spot" could only occur if, on the expiration date of the options, the exchange rate was at or above the strike price of the long option but below the strike price of the short option. If that occurred, there would be no payment obligation under the short option to offset the payout received under the long option. However, the difference between the strike price of the long option and that of the short option was negligible, only three pips. A pip is the smallest unit quoted for the price of any currency. The district court noted that in any given fifteen-minute period, the prices that banks quote for foreign currencies can vary by more than three pips.[8] Cohen and Patterson were advised that unless the "sweet spot" was attained, there would be tax losses. They never inquired about and were never told the odds of "hitting the sweet spot." Neither NPR nor the Taxpayers presented evidence in the district court of the likelihood of hitting the sweet spot, though a Government witness testified that there was no real probability of hitting the sweet spot.

On the same day that Cohen and Patterson met with DGI, they met with R.J. Ruble, who was then an attorney with Sidley, Austin, Brown & Wood LLP (Sidley Austin), at DGI's offices. Ruble provided Patterson and Cohen with a draft, template tax opinion letter describing a transaction similar to the one

---

[7] European-style means that the options could only be exercised on their expiration dates.

[8] *NPR Invs.*, 732 F. Supp. 2d at 680 n.6.

proposed by DGI. At this meeting, Ruble explained the potential tax benefits of the transaction. He told Patterson and Cohen that hitting the sweet spot was unlikely.

Nix and Patterson decided to enter into the investment scheme, and subsequently, Roach did as well. Each Taxpayer formed a single member limited liability company (SMLLC), managed by DGI. Nix and Patterson each funded their respective SMLLC's by contributing $625,000, and Roach contributed $375,000 to his. DGI and Alpha Consultants, Inc. (Alpha) formed NPR, a partnership, each contributing $50,000, and became its exclusive co-managers. Patterson, Nix, and Roach each purchased two pairs of offsetting foreign currency options, through their SMLLCs, with each paired option having the same expiration dates and near-identical strike prices. The Taxpayers contributed their SMLLCs to NPR, receiving partnership interests in NPR. Patterson and Nix each paid DGI an "advisory fee" of $750,000, and Roach paid DGI $450,000. Patterson and Nix each paid Cohen $250,000, and Nix paid him $150,000. All of these fees were based on a percentage of the tax losses that the investment strategy was expected to generate, which was $25,000,000 for Nix, $25,000,000 for Patterson, and $15,000,000 for Roach. DGI paid Cohen a referral fee of $325,000, although the Taxpayers were unaware of this until after the IRS had completed its audit of NPR.

The Government argues in its brief that the fees paid by the Taxpayers, and the contribution of the options to NPR, made it impossible for Roach to make a profit and made it extremely unlikely for Patterson and Nix to make a profit. The district court found that the NPR "investment strategy could be profitable, excluding any advisement fees,"[9] indicating that the strategy could not be profitable if the fees were considered.

---

[9] *Id.* at 680.

No. 10-41219

Forty days after becoming partners in NPR, the Taxpayers withdrew, receiving cash and foreign currencies, although the expiration dates of the options were months in the future. Each of the Taxpayers knew that withdrawing from NPR eliminated any possibility of "hitting the sweet spot" and therefore that a profit was impossible. They each contributed the foreign currencies to the Nix, Patterson & Roach, LLP law firm. All gains or losses from the foreign currencies were specially allocated to the respective contributing partner on the law firm's books and on the tax returns, although only the dollar amounts of losses, not the currencies or the currency transactions, were identified. On the law firm's tax returns, the losses were identified under a heading "Business Risk Division." Foreign currencies were sold in 2001, 2002, and 2003, and the law firm offset the losses against income allocated to each Taxpayer to reduce the earned income shown on Schedules K-1 issued to the Taxpayers.

After resigning from NPR, each Taxpayer obtained a written opinion from Sidley Austin on the proper tax treatment of their investments. The Taxpayers reviewed the opinions with Cohen, who concluded that they "had cited the important areas where there might be potential controversy and had adequately dealt with them to [his] satisfaction and that [the Taxpayers] would be ok." Cohen advised them that they could rely on the opinions because Sidley Austin was a "very well known firm," the opinions were "very, very well reasoned," and Ruble was an "acknowledged partnership tax expert."

In accordance with the tax opinions, the Taxpayers treated their bases in NPR as the premiums on the long options, ignoring the amount they might have to pay on the short options. These bases were carried over to the foreign currency after distribution, which was used by the Taxpayers to calculate approximately $65,000,000 in tax losses once the foreign currencies were sold. Nix's and Patterson's actual "investment" in NPR was $625,000, and Roach's

was $375,000, but Nix and Patterson each claimed an outside basis in the long options of almost $25,000,000, and Roach claimed an outside basis of almost $15,000,000.

The IRS ultimately concluded, in the FPAA issued in 2005, that NPR lacked economic substance, was a sham, and must be disregarded. This resulted in zeroing out all of the tax losses the Taxpayers had claimed on their individual returns. The FPAA also imposed accuracy-related and other penalties as a result of the partnership-level TEFRA audit.

The Taxpayers revived NPR in 2005. Patterson became its managing partner and Roach became a notice partner. In district court, Roach filed a petition for readjustment of partnership items on behalf of NPR. Nix intervened pursuant to § 6226(c)(2), and Patterson intervened pursuant to both §§ 6226(b)(6) and (c)(2).[10] The joint pre-trial order in the district court reflects that NPR, Nix, Patterson, and Roach conceded that NPR lacked a profit motive during 2001. Accordingly, the district court found that "the actual adjustments made by the IRS to the tax returns and whether NPR had [a] profit motive are not materially disputed. Rather, the dispute is whether the penalties applied by the IRS are applicable."[11]

The district court ruled on summary judgment that penalties for gross and substantial valuation misstatement did not apply as a matter of law. It also ruled, on the United States' motion to dismiss for lack of jurisdiction or alternatively for summary judgment, that it had jurisdiction over the Taxpayers' reasonable-cause and good-faith defenses to the asserted penalties. After a

---

[10] 26 U.S.C. § 6226(b)(6) ("The tax matters partner may intervene in any action brought under this subsection."); *id.* § 6226(c)(2) ("If an action is brought . . . with respect to a partnership for any partnership taxable year[,] . . . the court having jurisdiction of such action shall allow each such person to participate in the action.").

[11] *NPR Invs.*, 732 F. Supp. 2d at 684.

No. 10-41219

bench trial, the district court concluded that the August 15, 2005 FPAA was validly issued, and therefore the adjustments were proper.  However, the court also held that the penalty for negligence was inapplicable because there was a reasonable basis for the Taxpayers' positions and that the penalty for substantial understatement of income tax was inapplicable because the Taxpayers had substantial authority for their tax positions.  In the alternative, the district court held that none of the penalties was applicable because the Taxpayers met the requirements for the reasonable-cause and good-faith defense.

The Government appeals the district court's decision that the valuation misstatement and substantial understatement penalties are applicable.  The Government has not appealed the district court's holding regarding the negligence penalty.  NPR cross-appeals the district court's decision that the August 2005 FPAA was validly issued.  Accordingly, we must resolve whether the FPAA imposing penalties was valid.  If it was, we must determine whether the various penalties at issue are applicable to NPR, and whether NPR and the Taxpayers have defenses that may be considered in this partnership-level proceeding, rather than a partner-level proceeding.

## II

A brief overview of tax law in this area, and TEFRA in particular, is helpful in analyzing the questions before us.  The Supreme Court has explained the statutory scheme applicable to partnership-related tax matters in its recent decision in *United States v. Woods*.[12]  We quote that discussion:

> A partnership does not pay federal income taxes; instead, its taxable income and losses pass through to the partners.  26 U.S.C. § 701.  A partnership must report its tax items on an information return, § 6031(a), and the partners must report their distributive shares of the partnership's tax items on their own individual returns, §§ 702, 704.

---

[12] 134 S. Ct. 557 (2013).

No. 10-41219

Before 1982, the IRS had no way of correcting errors on a partnership's return in a single, unified proceeding. Instead, tax matters pertaining to all the members of a partnership were dealt with just like tax matters pertaining only to a single taxpayer: through deficiency proceedings at the individual-taxpayer level. *See generally* §§ 6211–6216 (2006 ed. and Supp. V). Deficiency proceedings require the IRS to issue a separate notice of deficiency to each taxpayer, § 6212(a) (2006 ed.), who can file a petition in the Tax Court disputing the alleged deficiency before paying it, § 6213(a). Having to use deficiency proceedings for partnership-related tax matters led to duplicative proceedings and the potential for inconsistent treatment of partners in the same partnership. Congress addressed those difficulties by enacting the Tax Treatment of Partnership Items Act of 1982, as Title IV of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA). 96 Stat. 648 (codified as amended at 26 U.S.C. §§ 6221–6232 (2006 ed. and Supp. V)).

Under TEFRA, partnership-related tax matters are addressed in two stages. First, the IRS must initiate proceedings at the partnership level to adjust "partnership items," those relevant to the partnership as a whole. §§ 6221, 6231(a)(3). It must issue an FPAA notifying the partners of any adjustments to partnership items, § 6223(a)(2), and the partners may seek judicial review of those adjustments, § 6226(a)–(b). Once the adjustments to partnership items have become final, the IRS may undertake further proceedings at the partner level to make any resulting "computational adjustments" in the tax liability of the individual partners. § 6231(a)(6). Most computational adjustments may be directly assessed against the partners, bypassing deficiency proceedings and permitting the partners to challenge the assessments only in post-payment refund actions. § 6230(a)(1), (c). Deficiency proceedings are still required, however, for certain computational adjustments that are attributable to "affected items," that is, items that are affected by (but are not themselves) partnership items. §§ 6230(a)(2)(A)(i), 6231(a)(5).[13]

This is an appeal from determinations the district court made in a partner-level TEFRA proceeding.

---

[13] *Woods*, 134 S. Ct. at 562-63.

No. 10-41219

**III**

A dispositive issue in this appeal is the validity of the August 15, 2005 FPAA that notified NPR of adjustments to the partnership tax return and imposed the penalties that are contested by NPR and the Taxpayers. The Taxpayers contend that this FPAA was a second notice, in violation of 26 U.S.C. § 6223(f), and therefore none of the penalties imposed in that FPAA can be applied. The district court disagreed and we affirm the district court in this regard.

TEFRA requires that partnerships, while not taxable entities, "file informational returns reflecting the distributive shares of income, gains, deductions, and credits attributable to its partners."[14] The IRS is required to notify certain partners of both the beginning and the end of a partnership-level proceeding.[15] An FPAA signifies the end of partnership-level proceedings.[16] The IRS may only mail one FPAA for a taxable year with respect to a partner unless there has been "a showing of fraud, malfeasance, or misrepresentation of a material fact."[17] The district court found there was a material misrepresentation of fact by NPR that permitted the IRS to issue a second notice under § 6223(f), if the FPAA at issue was in fact a second notice.[18] We find no error in the district court's findings of fact and conclusion of law in this regard.

NPR filed its 2001 partnership tax return in April 2002. The return answered "No" to the question, "Is this partnership subject to the consolidated

---

[14] *Weiner v. United States*, 389 F.3d 152, 154 (5th Cir. 2004).

[15] 26 U.S.C. § 6223(a).

[16] *See id.* § 6223(a)(2).

[17] *Id.* § 6223(f).

[18] *NPR Invs., LLC, ex rel. Roach v. United States*, 732 F. Supp. 2d 676, 687-88 (E.D. Tex. 2010).

audit procedures of Sections 6221 to 6223 [TEFRA]?" It is undisputed that because one of NPR's partners was a partnership, the answer should have been "Yes."[19] However, the return did designate a Tax Matters Partner, which is only required if the answer to the question of whether TEFRA procedures apply is "Yes."

By late 2002, the IRS had begun auditing Nix's and Patterson's respective individual tax returns in connection with their participation in the BLIPS tax shelter, the subject of a prior, separate appeal to this court. Paul Doerr, an IRS Agent, initially examined NPR's tax return in 2005. He did not use TEFRA procedures, but instead applied deficiency procedures because of his belief that NPR was not subject to TEFRA procedures. On March 25, 2005, Doerr sent a no-change letter to NPR indicating that the IRS had completed its audit of NPR's 2001 return and determined that no adjustments should be made to NPR's tax return. Doerr signed the notification on behalf of the IRS. Doerr and his managers decided to issue the no-change letter because they intended to deny the losses from the digital currency OPS investment scheme by issuing notices of deficiency directly to NPR's partners.

The March 25, 2005 deficiency notices denying losses on Patterson's personal tax returns (both for this OPS transaction and for his previous participation in BLIPS) were reviewed by an IRS manager, Robert Gee, and Gee concluded that NPR actually was subject to the TEFRA audit procedures. Gee determined that it would be necessary to issue an FPAA adjusting several partnership items on NPR's return rather than pursuing only deficiency proceedings. The IRS accordingly issued FPAAs to NPR's partners on August 15, 2005. The FPAA made several adjustments to NPR's partnership tax return,

---

[19] *See* 26 U.S.C. § 6231(a)(1)(B)(i)–(ii) (excluding small partnerships from the definition of "partnership" as long as each partner is an individual, a C corporation, or an estate of a deceased partner).

providing various explanations and imposing the penalties at issue in this appeal.

If the March 2005 no-change letter was an FPAA, then the August 2005 FPAA was only validly issued if there was "fraud, malfeasance, or misrepresentation of a material fact."[20] If the August 2005 FPAA was not validly issued, then none of the partnership adjustments are valid, and none of the penalties contained therein are applicable.

The Government contends that the March 2005 no-change letter was not an FPAA because the IRS did not intend it to be an FPAA. Therefore, the Government argues, § 6223(f) did not bar it from mailing the August 2005 FPAA. We find it unnecessary to address this contention, however, because we agree with the district court that NPR made a "misrepresentation of a material fact" on its partnership return, and therefore the August 2005 FPAA is valid.

The language of the statute is our guidepost in determining whether there was a material misrepresentation.[21] "We follow the 'plain and unambiguous meaning of the statutory language,' interpreting undefined terms according to their ordinary and natural meaning and the overall policies and objectives of the statute."[22] In determining the ordinary meaning of terms, dictionaries are often a principal source.[23] "If the statute is ambiguous, we may look to the legislative

---

[20] 26 U.S.C. § 6223(f).

[21] *United States v. Rains*, 615 F.3d 589, 596 (5th Cir. 2010) (citing *Watt v. Alaska*, 451 U.S. 259, 265 (1981)) ("As in any case involving statutory interpretation, we begin by examining the text of the relevant statutes.").

[22] *United States v. Orellana*, 405 F.3d 360, 365 (5th Cir. 2005) (quoting *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004)).

[23] *Id.* (quoting *Thompson v. Goetzmann*, 337 F.3d 489, 497 n.20 (5th Cir. 2003)).

history or agency interpretations for guidance."[24]  We must strive to give meaning to every term.[25]

Because "misrepresentation" is not defined by TEFRA, we consider dictionaries for a definition. *Black's Law Dictionary* defines "misrepresentation" as "[t]he act of making a false or misleading assertion about something, usu[ally] with the intent to deceive."[26]  However, as the district court observed,[27] that same dictionary granulates the broad term "misrepresentation" into more specific categories, including "fraudulent misrepresentation," "innocent misrepresentation," "material misrepresentation," and "negligent misrepresentation."[28]  The commonly understood term "misrepresentation" can encompass a fraudulent, negligent, or an innocent misrepresentation. In construing § 6223(f), intent to deceive does not appear to be required to establish a "misrepresentation."  A successive notice may be mailed when there has been "a showing of fraud, malfeasance, or misrepresentation of a material fact."[29]  "Malfeasance" does not necessarily involve intent to deceive.[30]  We will not read an intent to deceive into "misrepresentation" when another standard of conduct set forth in the statute does not require intent to deceive.

---

[24] *Id.* (citing *Kay*, 359 F.3d at 742).

[25] *See United States v. Rayo-Valdez*, 302 F.3d 314, 318 (5th Cir. 2002) (citing *TRW, Inc. v. Andrews*, 534 U.S. 19, 31 (2001); *United States v. Vickers*, 891 F.2d 86, 88 (5th Cir. 1989)) ("[W]hen interpreting a statute, it is necessary to give meaning to all its words and to render none superfluous.").

[26] BLACK'S LAW DICTIONARY 1091 (9th ed. 2009).

[27] *NPR Invs., LLC, ex rel. Roach v. United States*, 732 F. Supp. 2d 676, 687 (E.D. Tex. 2010).

[28] BLACK'S LAW DICTIONARY 1091-92 (9th ed. 2009).

[29] 26 U.S.C. § 6223(f).

[30] BLACK'S LAW DICTIONARY 1042 (9th ed. 2009) (defining "malfeasance" as "[a] wrongful or unlawful act; esp[ecially] wrongdoing or misconduct by a public official").

No. 10-41219

NPR cites several decisions that interpret "misrepresentation" as requiring some sort of culpability. These decisions are inapposite. One Supreme Court case cited by NPR interprets a different statute, and in any event, concludes that negligent misrepresentation is encompassed by the term "misrepresentation."[31] In two other decisions, one by a district court and one by a sister circuit court, "misrepresentation" is used in a different, albeit similar, context, but the list of conduct in which the term "misrepresentation" appears does not include "malfeasance."[32] A fourth decision, which interprets "misrepresentation" in a statute with nearly identical wording, follows a 1935 Board of Tax Appeals decision that concerned setting aside closing agreements, a situation quite different from the case at hand.[33]

NPR argues that if we hold that "misrepresentation" encompasses innocent misrepresentations, then we should also hold that the IRS must justifiably rely on that misrepresentation for the exception to apply. We decline to do so because there is no basis in the statute for such a requirement. NPR derives its argument from principles of tort law. This is not a tort case, however, and tort principles are inapposite.

NPR also cites to 26 U.S.C. § 6231(g)(2), which provides,

---

[31] *United States v. Neustadt*, 366 U.S. 696, 702, 706-07 (1961) (construing "misrepresentation" as used in the Federal Tort Claims Act, 28 U.S.C. § 2680(h), to include negligent misrepresentations when accompanied by the terms "assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, . . . deceit, or interference with contract rights").

[32] *Lane v. United States*, 286 F.3d 723, 731-32 (4th Cir. 2002) (construing "misrepresentation" when accompanied by "fraud," but not "malfeasance," to require more than an innocent misrepresentation); *United States v. N. Trust Co.*, 93 F. Supp. 2d 903, 908-09 (N.D. Ill. 2000) (construing "misrepresentation" when accompanied by "fraud," but not "malfeasance," to require an intentional or knowing misrepresentation), *rev'd on other grounds*, 372 F.3d 886 (7th Cir. 2004).

[33] *Halpern v. Comm'r*, 79 T.C.M. (CCH) 1976, 2000 WL 502842, at *4 (2000); *see also Ingram v. Comm'r*, 32 B.T.A. 1063 (1935).

15

No. 10-41219

[i]f, on the basis of a partnership return for a taxable year, the Secretary reasonably determines that this subchapter does not apply to such partnership for such year but such determination is erroneous, then the provisions of this subchapter shall not apply to such partnership (and its items) for such taxable year.

This provision does not, however, override § 6223(f), which expressly permits the IRS to mail a second notice of final partnership administrative adjustment for a partnership taxable year if there is "a showing of fraud, malfeasance, or misrepresentation of a material fact."  NPR's construction of § 6231(b)(2) would excise § 6223(f) from the Code.

## IV

The district court correctly held that the August 2005 FPAA was valid, but concluded that none of the penalties imposed by the FPAA could be applied.  We first consider the 20% substantial valuation misstatement under 26 U.S.C. § 6662(e) and the 40% gross valuation misstatement under § 6662(h).  These penalties are not cumulative.  If there was a gross valuation misstatement, only the 40% penalty applies.[34]

## A

A threshold question is whether the district court had jurisdiction to address the applicability of the valuation misstatement penalties in this partnership-level TEFRA proceeding.  Two decisions from our sister circuits had held that district courts do not,[35] and we asked for further briefing from the parties on this question, particularly in light of the fact that the Supreme Court had called for briefing on the jurisdictional issue before deciding *United States*

---

[34] 26 U.S.C. § 6662(h)(1) ("To the extent that a portion of the underpayment to which this section applies is attributable to one or more gross valuation misstatements, subsection (a) shall be applied with respect to such portion by substituting '40 percent' for '20 percent'.").

[35] *See Jade Trading, LLC ex rel. Ervin v. United States*, 598 F.3d 1372, 1379-80 (Fed. Cir. 2010); *Petaluma FX Partners LLC v. Comm'r*, 591 F.3d 649, 655-56 (D.C. Cir. 2010).

No. 10-41219

*v. Woods.*[36] We now have a definitive answer from the Supreme Court in *Woods*, which is that the district court did have jurisdiction to determine the applicability of the misstatement penalties, even if only provisionally.[37]

In the interest of accuracy and the conservation of judicial resources, we again quote at length from the *Woods* decision:

> Under TEFRA's two-stage structure, penalties for tax underpayment must be imposed at the partner level, because partnerships themselves pay no taxes. And imposing a penalty always requires some determinations that can be made only at the partner level. Even where a partnership's return contains significant errors, a partner may not have carried over those errors to his own return; or if he did, the errors may not have caused him to underpay his taxes by a large enough amount to trigger the penalty; or if they did, the partner may nonetheless have acted in good faith with reasonable cause, which is a bar to the imposition of many penalties, *see* § 6664(c)(1). None of those issues can be conclusively determined at the partnership level. Yet notwithstanding that every penalty must be imposed in partner-level proceedings after partner-level determinations, TEFRA provides that the applicability of some penalties must be determined at the partnership level. The applicability determination is therefore inherently provisional; it is always contingent upon determinations that the court in a partnership-level proceeding does not have jurisdiction to make. Barring partnership-level courts from considering the applicability of penalties that cannot be imposed without partner-level inquiries would render TEFRA's authorization to consider some penalties at the partnership level meaningless.
>
> Other provisions of TEFRA confirm that conclusion. One requires the IRS to use deficiency proceedings for computational adjustments that rest on "affected items which require partner level determinations (other than penalties . . . that relate to adjustments to partnership items)." § 6230(a)(2)(A)(i). Another states that while a partnership-level determination "concerning the applicability of

---

[36] 134 S. Ct. 557 (2013).

[37] *Woods*, 134 S. Ct. at 564.

any penalty . . . which relates to an adjustment to a partnership item" is "conclusive" in a subsequent refund action, that does not prevent the partner from "assert[ing] any partner level defenses that may apply." § 6230(c)(4). Both these provisions assume that a penalty can relate to a partnership-item adjustment even if the penalty cannot be imposed without additional, partner-level determinations.

These considerations lead us to reject Woods' interpretation of § 6226(f). We hold that TEFRA gives courts in partnership-level proceedings jurisdiction to determine the applicability of any penalty that could result from an adjustment to a partnership item, even if imposing the penalty would also require determining affected or non-partnership items such as outside basis. The partnership-level applicability determination, we stress, is provisional: the court may decide only whether adjustments properly made at the partnership level have the potential to trigger the penalty. Each partner remains free to raise, in subsequent, partner-level proceedings, any reasons why the penalty may not be imposed on him specifically.

Applying the foregoing principles to this case, we conclude that the District Court had jurisdiction to determine the applicability of the valuation-misstatement penalty—to determine, that is, whether the partnerships' lack of economic substance (which all agree was properly decided at the partnership level) could justify imposing a valuation-misstatement penalty on the partners. When making that determination, the District Court was obliged to consider Woods' arguments that the economic-substance determination was categorically incapable of triggering the penalty. Deferring consideration of those arguments until partner-level proceedings would replicate the precise evil that TEFRA sets out to remedy: duplicative proceedings, potentially leading to inconsistent results, on a question that applies equally to all of the partners.

To be sure, the District Court could not make a formal adjustment of any partner's outside basis in this partnership-level proceeding. *See Petaluma*, 591 F.3d, at 655. But it nonetheless could determine whether the adjustments it did make, including the economic-substance determination, had the potential to trigger a penalty; and in doing so, it was not required to shut its eyes to the legal impossibility of any partner's possessing an outside basis

18

No. 10-41219

greater than zero in a partnership that, for tax purposes, did not exist. Each partner's outside basis still must be adjusted at the partner level before the penalty can be imposed, but that poses no obstacle to a partnership-level court's provisional consideration of whether the economic-substance determination is legally capable of triggering the penalty.[38]

The district court had jurisdiction to adjudicate the applicability of the valuation misstatement penalties in a case, such as this, in which the partnership is disregarded in its entirety as a sham and the outside basis of its partners is reduced to zero.

**B**

The district court held on summary judgment that no penalty for valuation misstatement applied. This court reviews the district court's grant of summary judgment de novo.[39] "Summary judgment is appropriate [when] there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."[40]

The Supreme Court's decision in *Woods* also resolves the applicability of the valuation misstatement penalties.[41] We accordingly reverse the district court as to the applicability of these penalties.

Under 26 U.S.C. § 6662(a) and (b)(3), a 20% penalty applies to "the portion of any underpayment which is attributable to . . . [a]ny substantial valuation misstatement under chapter 1."[42] Under the version of the tax code applicable

---

[38] *Id*. at 564-65.

[39] *Conway v. United States*, 647 F.3d 228, 232 (5th Cir. 2011) (citing *Staff IT, Inc. v. United States*, 482 F.3d 792, 797 (5th Cir. 2007)).

[40] *Id*. (citing *Staff IT*, 647 F.3d at 797-98); *see also* FED. R. CIV. P. 56(a).

[41] *Woods*, 134 S. Ct. at 565-68.

[42] 26 U.S.C. § 6662(a), (b)(3).

No. 10-41219

to the transactions at issue, a "substantial understatement" occurs if "the value of any property (or the adjusted basis of any property) claimed on any return of tax imposed by chapter 1 is 200 percent or more of the amount determined to be the correct amount of such valuation or adjusted basis (as the case may be)."[43] The penalty increases to 40% under § 6662(h) for a "gross" valuation misstatement if the value or adjusted basis exceeds the correct amount by at least 400%.[44]

The foreign currency OPS transactions in which NPR and the Taxpayers engaged were used to generate tax losses by enabling the partners in NPR to claim a high outside basis in the partnership. The FPAA deemed the NPR partnership to no longer exist, and accordingly, no partner could legitimately claim an outside basis greater than zero. If the Taxpayers used an outside basis figure greater than zero to claim losses on their respective tax returns, which they did in this case, "then the resulting underpayment would be 'attributable to' the partner[s'] having claimed an 'adjusted basis' in the partnership that exceeded the 'correct amount of such . . . adjusted basis'" within the meaning of § 6662(e)(1)(A).[45] Treasury regulations provide that when an asset's true value or adjusted basis is zero, then the value or adjusted basis claimed is considered to be 400% or more of the correct amount, and the valuation misstatement is deemed gross and subject to the 40% penalty.[46]

In holding that the valuation misstatement penalties did not apply as a matter of law, the district court relied on authorities from our court that have been overruled or abrogated by *Woods*. The district court erred in its holding.

---

[43] 26 U.S.C. § 6662(e)(1)(A) (2000) (amended 2006).

[44] *Id.* § 6662(h) (2000) (amended 2006).

[45] *See Woods*, 134 S. Ct. at 566.

[46] *See id.* (quoting Treas. Reg. § 1.6662-5(g), 26 C.F.R. § 1.6662-5(g) (2013)).

No. 10-41219

The 40% valuation misstatement penalty applies, at least provisionally, as explained in *Woods*.

## V

The Internal Revenue Code provides for a 20% penalty for the portion of underpayment of tax that is attributable to any substantial understatement of income tax.[47] The amount of an understatement is reduced by any portion of the understatement that is attributable to "the tax treatment of any item by the taxpayer if there is or was substantial authority for such treatment."[48] In cases in which the facts are essentially undisputed, whether substantial authority exists for a tax treatment is a legal question that this court reviews de novo.[49] In a case involving a tax shelter, prior to the 2004 amendments to the Tax Code, the substantial authority exception did not apply unless the "taxpayer reasonably believed that the tax treatment of such item by the taxpayer was more likely than not the proper treatment."[50]

The FPAA imposed a substantial understatement penalty of 20% (in addition to a valuation misstatement penalty) under 26 U.S.C. § 6662(d). The Taxpayers contended, and the district court held at the conclusion of a bench trial, that there was "substantial authority" for the Taxpayers' tax treatment of their investments, within the meaning of § 6662(d)(2)(B)(i). The district court further held that assuming, without deciding, that NPR was a tax shelter, the Taxpayers reasonably believed that the tax treatment applied to the

---

[47] 26 U.S.C. § 6662(a), (b)(2).

[48] 26 U.S.C. § 6662(d)(2)(B)(i).

[49] *Stanford v. Comm'r*, 152 F.3d 450, 455 (5th Cir. 1998).

[50] 26 U.S.C. § 6662(d)(2)(C)(i)(II) (2000) (amended 2004).

transactions was "more likely than not" the proper tax treatment.[51] Whether the Taxpayers reasonably believed that the tax treatment of their respective investments was more likely than not the proper treatment would appear to be a partner-level matter that should not be resolved in a partnership-level proceeding. But we do not reach the issue because there was no substantial authority for the tax treatment. That is a question common to all NPR partners and does not depend on an individual taxpayer's circumstances. A partnership item is "any item required to be taken into account for the partnership's taxable year under any provision of Subtitle A [income tax] to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level."[52] IRS regulations provide that partnership items include, among other items, "[i]tems of income, gain, loss, deduction, or credit of the partnership," and "partnership liabilities," as well as "the accounting practices and the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc."[53] The parties to this appeal agree, and we concur, that whether there was substantial authority for the tax treatment given to the NPR assets that were distributed to the Taxpayers is "more appropriately determined at the partnership level than at the partner level."[54]

---

[51] *NPR Invs., LLC, ex rel. Roach v. United States*, 732 F. Supp. 2d 676, 689-90 (E.D. Tex. 2010).

[52] 26 U.S.C. § 6231(a)(3).

[53] Treas. Reg. § 301.6231(a)(3)-1.

[54] 26 U.S.C. § 6231(a)(3).

No. 10-41219

"The substantial authority standard is an objective standard involving an analysis of the law and application of the law to relevant facts."[55]  Substantial authority exists "if the weight of the authorities supporting the treatment is substantial in relation to the weight of authorities supporting contrary treatment."[56]  The substantial authority standard is lower than the more-likely-than-not standard, but greater than the reasonable-basis standard.[57]  Treasury regulations provide a lengthy list of what constitutes authority for purposes of the substantial authority exception.[58]  Notably, "[t]reatises, legal periodicals, legal opinions or opinions rendered by tax professionals are not authority."[59]  However, the authorities underlying those opinions may give rise to substantial authority.[60]  Whether substantial authority exists is determined as of "the time the return containing the item is filed or . . . on the last day of the taxable year to which the return relates."[61]

The district court's opinion correctly stated the applicable legal principles, but it then partially based its holding that the Taxpayers had substantial authority on the existence of a tax opinion from the law firm of Sidley, Austin, Brown & Wood LLP and the fact that the Taxpayers received legal advice from tax counsel.[62]  The district court's opinion does not cite or discuss the authorities

---

[55] Treas. Reg. § 1.6662-4(d)(2).

[56] *Id.* § 1.6662-4(d)(3)(i).

[57] *Id.* § 1.6662-4(d)(2).

[58] *See id.* § 1.6662-4(d)(3)(iii).

[59] *Id.*

[60] *Id.*

[61] Treas. Reg. § 1.6662-4(d)(3)(v).

[62] *NPR Invs., LLC, ex rel. Roach v. United States*, 732 F. Supp. 2d 676, 689 (E.D. Tex. 2010).

analyzed in the tax opinion. To the extent that the district court concluded that the opinion itself provided substantial authority, the court erred as a matter of law. The tax opinion itself cannot provide substantial authority.[63]

To the extent that the district court's opinion holds that the authorities contained in the Sidley Austin tax opinion provide substantial authority for the Taxpayers' position, the district court also erred. NPR relies principally on the *Helmer*[64] line of cases for substantial authority. *Helmer*, a Tax Court opinion, established the proposition that contingent obligations are not liabilities under 26 U.S.C. § 752 and thus do not effect a change in a partner's basis.[65] The *Helmer* rule was authoritative at the time that the tax returns were filed. It was not changed by IRS regulation until 2003, after the relevant time period here.[66]

However, other courts have held that reliance on *Helmer* alone cannot support substantial authority in circumstances similar to those before us.[67] These cases generally reason that *Helmer* does not address the situation in which the transactions lack economic substance. According to IRS regulations, "[t]he weight accorded an authority depends on its relevance and persuasiveness."[68] When the underlying transactions lack economic substance, *Helmer* cannot provide substantial authority. In a similar vein, *Helmer* does not address the situation in which the partnership lacked a profit motive. NPR has

---

[63] Treas. Reg. § 1.6662-4(d)(3)(iii).

[64] *Helmer v. Comm'r*, 34 T.C.M. (CCH) 727, 1975 WL 2787 (1975).

[65] *Id.*

[66] Treas. Reg. § 1.752-1(a)(4)(ii), (iv).

[67] *See, e.g., New Phoenix Sunrise Corp. v. Comm'r*, 132 T.C. 161, 191-92 (2009), *aff'd*, 408 F. App'x 908 (6th Cir. 2010) (unpublished); *Stobie Creek Invs., LLC v. United States*, 82 Fed. Cl. 636, 706 (2008), *aff'd*, 608 F.3d 1366 (Fed. Cir. 2010); *Palm Canyon X Invs., LLC v. Comm'r*, 98 T.C.M. (CCH) 574, 2009 WL 4824326, at *35-*36 (2009).

[68] Treas. Reg. § 1.6662-4(d)(3)(ii).

not cited, nor have we found, any cases that stand for the proposition that the Taxpayers could deduct these losses when NPR lacks a profit motive. The authorities appear to support the opposite proposition.[69] NPR and the Taxpayers have conceded that NPR lacked a profit motive and that this precludes the Taxpayers from deducting the losses.

An IRS notice, Notice 2000-44, that was issued before the Taxpayers invested in the OPS shelter is another authority supporting nondeductibility.[70] Notice 2000-44 warns that the IRS is of the opinion that transactions such as those at issue here are abusive tax practices and that it will not allow deductions from such artificial losses. NPR argues that the Notice is only the IRS's litigating position and cannot be authority. However, NPR's argument is directly contrary to IRS regulations, which list such notices as authority for purposes of the substantial authority analysis.[71] The Notice may have less weight than a statute or regulation, but it is authority nonetheless. The only authorities concerning deductions when the partnership did not have a profit motive point to nondeductibility. We therefore reverse the district court's judgment that there was substantial authority for the tax treatment of the OPS transactions. The substantial understatement of income tax penalty applies.

---

[69] *Marinovich v. Comm'r*, 77 T.C.M. (CCH) 2075, 1999 WL 339316, at *3 (1999); *see also, e.g.*, *Copeland v. Comm'r*, 290 F.3d 326, 330 (5th Cir. 2002); *Fidelity Int'l Currency Advisor A Fund, LLC v. United States*, 747 F. Supp. 2d 49, 236 (D. Mass. 2010) (citing pre-2000 cases for the proposition that "[e]ven if taxpayers invest in a partnership with the individual objective of making a profit, they are not entitled to deduct any amounts invested in the partnership as losses under Section 165(c)(2) if the partnership transactions are not entered into for profit"); *Farmer v. Comm'r*, 68 T.C.M. (CCH) 178, 1994 WL 386167, at *3 (1994).

[70] Notice 2000-44, 2002-2 C.B. 255.

[71] Treas. Reg. § 1.6662-4(d)(3)(iii).

No. 10-41219

## VI

Even if penalties are properly imposed and would otherwise be applicable, the Internal Revenue Code provides a defense "if it is shown that there was a reasonable cause for" the underpayment of tax.[72] The district court held that the Taxpayers demonstrated reasonable cause. Because the district court did not have jurisdiction to adjudicate the individual partners' defenses in a partnership-level proceeding, we vacate this part of the district court's judgment. To the extent that the district court's judgment can be construed as concluding that NPR demonstrated reasonable cause, we reverse the district court's judgment in this regard. There was no evidence presented that would support a finding of reasonable cause as to NPR. To the contrary, the evidence is conclusive that NPR did not have reasonable cause.

It is well-settled that a district "court does not have jurisdiction to consider a partner-level defense in a partnership-level proceeding."[73] Our court has held, however, in connection with Nix's and Patterson's BLIPS transactions, that "when considering the determination of penalties at the partnership level the court may consider the defenses of the partnership."[74] Other circuit courts have similarly concluded that partnership defenses can be adjudicated in partner-level proceedings.[75]

---

[72] 26 U.S.C. § 6664(c)(1) ("No penalty shall be imposed under section 6662 or 6663 with respect to any portion of an underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion.").

[73] *See, e.g.*, *Am. Boat Co. v. United States*, 583 F.3d 471, 478 (7th Cir. 2009).

[74] *Klamath Strategic Inv. Fund ex rel. St. Croix Ventures v. United States*, 568 F.3d 537, 548 (5th Cir. 2009).

[75] *See Stobie Creek Invs. LLC v. United States*, 608 F.3d 1366, 1380-81 (Fed. Cir. 2010); *Am. Boat*, 583 F.3d at 479-80. *But see Clearmeadow Invs., LLC v. United States*, 87 Fed. Cl. 509, 520-21 (2009) (criticizing *Klamath* and *Stobie Creek* and concluding that these decisions "are in error").

No. 10-41219

In *Klamath*, "reasonable cause and good faith were asserted on behalf of Klamath and Kinabalu, by the current managing partners."[76]  In the present case, the district court's decision reflects that it focused entirely on the reasonable belief and good faith of each of the individual Taxpayers, not NPR's reasonable belief and good faith.[77]  No mention is made by the district court of NPR's or its managing partner's reasonable belief or good faith.  The district court lacked jurisdiction to make any determinations with regard to the reasonable belief or good faith of the individual Taxpayers.

NPR asks that we affirm the district court's holdings as to it.  However, at the time that the Taxpayers made their respective decisions as to how to treat the NPR transactions, they had withdrawn from NPR and were no longer partners.  When NPR was created, through the time that the Taxpayers withdrew from NPR, its managing partners were exclusively DGI and Alpha Consultants LLC.  Patterson did not become the managing partner of NPR until 2005, when the partnership was reformed to pursue this litigation.  NPR has conceded that it never had a profit motive.  The managing partners of NPR at the relevant time periods did not claim a reasonable belief regarding the tax treatment of the NPR investments.  Those partners are not parties to this litigation and have refused to testify, asserting their Fifth Amendment privilege.  NPR had the burden to prove a reasonable belief and good faith.[78]  It failed to carry that burden.  NPR is not entitled to the reasonable-cause and good-faith defense.

\*     \*     \*

---

[76] *Klamath*, 568 F.3d at 548.

[77] *NPR Invs., LLC, ex rel. Roach v. United States*, 732 F. Supp. 2d 676, 692-93 (E.D. Tex. 2010).

[78] *Klamath*, 568 F.3d at 548 ("The plaintiff bears the burden of proof on a reasonable cause defense.").

27

No. 10-41219

For the foregoing reasons, we AFFIRM the district court's judgment regarding the finality of the FPAA; REVERSE the district court's judgment regarding the valuation misstatement and substantial underpayment penalties as well as its judgment regarding NPR's reasonable-cause defense; and VACATE the district court's judgment regarding the Taxpayers' reasonable-cause defenses.