# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 27, 2025

Lyle W. Cayce
Clerk

No. 24-60013

_____

NATIONAL AUTOMOBILE DEALERS ASSOCIATION; TEXAS
AUTOMOBILE DEALERS ASSOCIATION,

*Petitioners*,

*versus*

FEDERAL TRADE COMMISSION,

*Respondent*.

_____

Petition for Review of a Final Rule of the Federal Trade Commission
Agency No. P204800, RIN 3084-AB72

_____

Before HIGGINBOTHAM, SMITH, and HIGGINSON, *Circuit Judges*.
PATRICK E. HIGGINBOTHAM, *Circuit Judge*:

The National Automobile Dealers Association and the Texas Automobile Dealers Association petition this Court for review of the Combating Auto Retail Scams Trade Regulation Rule ("CARS Rule"), a final trade regulation rule promulgated by the Federal Trade Commission ("FTC" or "Commission"). Petitioners ask this Court to vacate the CARS Rule on the grounds that: (1) the FTC violated its own regulations by failing to issue an advance notice of proposed rulemaking; (2) the FTC arbitrarily and capriciously failed to articulate a reasoned basis for the Rule; and (3) the FTC's

No. 24-60013

cost-benefit analysis was arbitrary and capricious. In the alternative, petitioners ask for a remand for the consideration of additional evidence.

Finding that the FTC failed to issue an advance notice of proposed rulemaking in violation of its own regulations, we GRANT the petition for review and VACATE the CARS Rule.

## I.

This case travels on the statutory rails and frame of the FTC.[1] First, it prohibits "unfair or deceptive acts or practices in or affecting commerce"[2] and § 18(a)(1)(B) of the FTC Act vests the Commission with authority to "prescribe . . . rules which define with specificity acts or practices which are unfair or deceptive acts or practices in or affecting commerce."[3]

Section 18(b) of the FTC Act requires the Commission to issue an advance notice of proposed rulemaking ("ANPRM") prior to a notice of proposed rulemaking ("NPRM") when promulgating regulations under section 18(a)(1)(B) of the Act.[4] The Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank Act"), in turn, relaxes the statutory procedures that the FTC must follow when promulgating rules regulating motor vehicle dealers.[5] Specifically, Congress provided that:

> Notwithstanding [§ 18], the Federal Trade Commission is authorized to prescribe rules under sections [5] and [18(a)(1)(B),]

---

[1] *See* The Federal Trade Commission Act of 1914 (codified at 15 U.S.C.A. § 58).

[2] 15 U.S.C. § 45(a)(1).

[3] 15 U.S.C. § 57a(a)(1)(B).

[4] 15 U.S.C. § 57a(b)(1)–(2)(A) (When promulgating rules under § 57a(a)(1)(B), "the Commission shall publish an advance notice of proposed rulemaking" before "the publication of any notice of proposed rulemaking.").

[5] Section 1029(d) of the Dodd-Frank Act (codified at 12 U.S.C. § 5519(d)).

No. 24-60013

in accordance with Section 553 of [the Administrative Procedure Act], with respect to a [motor vehicle dealer].[6]

In short, the Dodd-Frank Act authorized the FTC to promulgate rules regulating motor vehicle dealers without first issuing an ANPRM. The FTC has also codified its own procedural regulations, providing two different kinds of rulemaking procedures: subparts B and C of 16 C.F.R. ch. I, subch. A, pt.1. It is a given of administrative law that agencies must follow their own regulations.[7]

"Subpart B" procedures "govern proceedings for the promulgation of rules as provided in Section 18(a)(1)(B). . . . Such rules will be known as trade regulation rules."[8] Under subpart B, "[p]rior to the commencement of any trade regulation rule proceeding, the Commission must publish in the Federal Register an advance notice of such proposed proceeding."[9]

---

[6] 12 U.S.C. § 5519(d).

[7] *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *Chevron Oil Co. v. Andrus*, 588 F.2d 1383, 1386 (5th Cir. 1979) ("[A]n agency must abide by its own regulations.").

[8] 16 C.F.R. § 1.7.

[9] 16 C.F.R. § 1.10(a). The advance notice must include "a brief description of the area of inquiry under consideration, the objectives which the Commission seeks to achieve, and possible regulatory alternatives under consideration by the Commission." 16 C.F.R. § 1.10(b)(1). Further, the notice must "[i]nvite the response of interested persons with respect to such proposed rulemaking, including any suggestions or alternative methods for achieving such objectives." 16 C.F.R. § 1.10(b)(2).

Subpart C procedures apply to "the promulgation of rules under authority other than Section 18(a)(1)(B) of the FTC Act,"[10] and do not require an ANPRM.[11]

## II.

Shortly after the passage of the Dodd-Frank Act, the FTC held three public roundtables with stakeholders in the motor vehicle sales industry to address consumer protection issues by rulemaking.[12] But in the years that followed, the Commission instead opted to address consumer protection issues in the auto industry through enforcement actions and business guidance in lieu of promulgating a new rule.[13]

In 2022, the FTC concluded that—despite more than a decade of enforcement and education action—"certain unfair and deceptive acts or practices have persisted" in the motor vehicle sales industry, and determined that a rulemaking was necessary to combat those acts and practices.[14] Then, in July 2022, without issuing an ANPRM, the FTC published an

---

[10] 16 C.F.R. § 1.21. The scope of Subpart C procedures covers the promulgation of all "rules under authority other than Section 18(a)(1)(B) of the FTC Act except as otherwise required by law or otherwise specified in the rules of this chapter. This subpart does not apply to the promulgation of industry guides, general statements of policy, rules of agency organization, procedure, or practice, or rules governed by subpart B of this part."

[11] *See* 16 C.F.R. § 1.26.

[12] Pub. Roundtables: Protecting Consumers in the Sale and Leasing of Motor Vehicles, 76 Fed. Reg. 14,014 (Notice) (Mar. 15, 2011). The FTC filed a "certified list" of the record, and the petitioners filed a two-volume appendix with excerpts from the record documents.

[13] Combating Auto Retail Scams Trade Regulation Rule, 89 Fed. Reg. 590, 591 (Jan. 4, 2024).

[14] *Id.*

No. 24-60013

NPRM.[15] The NPRM provided a 60-day comment period and included a set of 49 open-ended questions to solicit industry responses.[16] The FTC received over 27,000 comments on the proposed rule.[17]

### III.

On January 4, 2024, the FTC published the final CARS Rule,[18] setting the Rule's effective date as July 30, 2024.[19] The purpose of the Rule is to "target bait-and-switch tactics and hidden or junk fees by covered automobile dealers." The Rule contains four main provisions: a prohibition on specific kinds of misrepresentations; a series of disclosure requirements; a prohibition on valueless "add-ons"; and a requirement to obtain express, informed consent from consumers before charging for any item.[20]

First, the CARS Rule identifies and prohibits sixteen specific kinds of dealer misrepresentations.[21] These include: the cost or terms of purchasing, financing, or leasing a vehicle; the availability of rebates or discounts;

---

[15] Motor Vehicle Dealers Trade Regulation Rule, 87 Fed. Reg. 42,012 (NPRM) (July 13, 2022).

[16] *Id.* at 42,027-31.

[17] 89 Fed. Reg. at 591.  NADA submitted comments.  *See* Nat'l Auto. Dealers Ass'n, Comment No. FTC-2022-0046-8368 (Sept. 12, 2022); Tex. Auto. Dealers Ass'n, Comment No. FTC-2022-0046-8102 (Sept. 9, 2022); *and* Nat'l Auto. Dealers Ass'n, Comment No. FTC-2022-0046-0019 (July 18, 2022) (requesting extension to comment period).

[18] 89 Fed. Reg. 590.

[19] *Id.* at 660.

[20] *Id.* at 694–95.

[21] *Id.* at 694 (16 C.F.R. § 463.3).

the availability of vehicles at an advertised price; information about financing; and whether consumer reviews are unbiased or independent.[22]

Second, the CARS Rule requires covered auto dealers to make disclosures regarding price, add-ons, and payments.[23] When advertising or discussing a specific vehicle, dealers must disclose the "offering price" or the *true* price at which the dealer will sell the vehicle, and must provide that information in their first response to a consumer inquiry.[24] When discussing an optional add-on with a consumer, dealers must disclose that the add-on is not necessary.[25] In addition, when making a representation to a consumer about monthly payments for a vehicle, dealers must disclose the total amount that the consumer will ultimately pay, including whether a lower monthly payment will increase that total cost.[26]

Third, the CARS Rule prohibits covered auto dealers from charging consumers for add-ons that provide no benefit to them, such as "[p]roducts or services . . . that are duplicative of warranty coverage for the Vehicle."[27]

Fourth, the CARS Rule prohibits covered auto dealers from charging a consumer for any item unless they obtain "the Express, Informed Consent of the consumer for the charge."[28]

Finally, the CARS Rule requires dealers to "create . . . all records necessary to demonstrate compliance" with the Rule and to retain those

_____

[22] *Id.*

[23] *Id.* (16 C.F.R. § 463.4).

[24] *Id.* (16 C.F.R. §§ 463.3(k), 463.4(a)).

[25] *Id.* (16 C.F.R. § 463.4(c)).

[26] *Id.* at 694–95 (16 C.F.R. § 463.4(d)).

[27] *Id.* at 695 (16 C.F.R. § 463.5(a)).

[28] *Id.* (16 C.F.R. § 463.5(c)).

records for two years.[29] The CARS Rule, however, does not impose any specific recordkeeping format: dealers may satisfy this administrative requirement by keeping records "in the same manner, format, or place" as they already do "in the ordinary course of business."[30]

## IV.

On January 4, 2024—the same day that the FTC published its final Rule— the National Automobile Dealers Association and the Texas Automobile Dealers Association (collectively, "NADA") petitioned for review in this Court. Petitioners also moved to stay the CARS Rule pending review, and the FTC responded by itself staying the Rule pending the completion of judicial review.

NADA challenges the CARS Rule on three grounds, arguing that the Rule violates section 706 of the Administrative Procedure Act.[31] Petitioners argue that the CARS Rule should be set aside because: (1) the FTC did not issue an ANPRM, violating its own regulations; (2) the Rule is arbitrary and capricious because the FTC did not engage in reasoned decision making; and (3) the Rule is arbitrary and capricious because the FTC's cost-benefit analysis was unreasonable. In the alternative, NADA asks this Court to remand the Rule to the FTC for the consideration of additional evidence.

## V.

The FTC Act provides that a court reviewing a trade regulation rule "shall hold unlawful and set aside the rule on any ground specified in subparagraphs (A), (B), (C), or (D) of section 706(2) [of the Administrative

---

[29] *Id.* (16 C.F.R. § 463.6).

[30] *Id.*

[31] 5 U.S.C. § 706.

Procedure Act]."[32]  Section 706(2) of the Administrative Procedure Act ("APA"), in turn, instructs courts to set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,"[33] or "without observance of procedure required by law[.]"[34]

## VI.

NADA argues that the FTC failed to follow its own procedural rules when it promulgated the CARS Rule without an ANPRM and asks the Court to set the Rule aside under § 706(2)(D) of the APA. We agree and vacate the Rule on procedural grounds.

## A.

Whether the FTC erred in promulgating the CARS Rule without an ANPRM hinges on whether the statutory authority for the Rule comes from § 18(a)(1)(B) of the FTC Act or from § 1029(d) of the Dodd-Frank Act. If the statutory authority for the CARS Rule stems from § 18(a)(1)(B) of the FTC Act, then subpart B procedures of the FTC's internal regulations apply and an ANPRM is required. If the statutory authority instead is drawn from the Dodd-Frank Act, then subpart C procedures apply and an ANPRM is not required. We are persuaded that the substantive authority for the CARS Rule arises from § 18(a)(1)(B) of the FTC Act and that subpart B procedures apply.

## 1.

NADA asserts that the CARS Rule falls under § 18(a)(1)(B) of the FTC Act, and "although Dodd-Frank exempted the FTC from [§ 18(b) of

---

[32] 15 U.S.C. § 57a(e)(3).

[33] 5 U.S.C. § 706(2)(A).

[34] 5 U.S.C. § 706(2)(D).

the FTC Act's] statutory ANPRM requirement for trade regulation rules involving auto dealers, the distinct ANPRM requirement in [subpart B] of the FTC's regulations remains in force and applies by its terms to 'any trade regulation rule proceeding.'" Because subpart B procedures apply, an ANPRM was required.

The FTC counters that the CARS Rule was promulgated under the Dodd-Frank Act. The Commission points to the preamble[35] and the authority provision[36] of the CARS Rule, which state that the FTC promulgated the Rule under section 1029(d) of the Dodd-Frank Act. Because subpart C—which does *not* require an ANPRM—covers "the promulgation of rules under authority other than section 18(a)(1)(B) [of the FTC Act]," the Commission maintains that subpart C procedures apply and that there was no requirement to issue an ANPRM in promulgating the CARS Rule. The FTC argues that interpreting the statutory framework otherwise "would effectively thwart a key provision of Dodd-Frank."

It is undisputed that the Dodd-Frank Act exempted the FTC from the statutory ANPRM requirements in § 18 of the FTC Act. We find, however, that the Dodd-Frank Act does not grant the Commission any substantive authority separate from § 18(a)(1)(B) of the FTC Act. Instead, the Dodd-Frank Act only exempts the Commission from certain procedures when exercising existing authority to regulate the auto dealer industry: notwithstanding the extra procedures outlined in § 18 of the FTC Act, the Commission has

---

[35] 89 Fed. Reg. at 601 n. 115. The FTC purported to be "acting under statutory authority under section 1029(d) of the Dodd-Frank Act."

[36] *Id.* at 693 (16 C.F.R. § 463.1) ("This part is promulgated pursuant to section 1029 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, 12 U.S.C. 5519(d).").

statutory permission to promulgate § 18(a)(1)(B) rules for auto dealers "in accordance with" normal APA procedure.

And, the Dodd-Frank Act did not—as the FTC contends—give "the Commission a clear directive to use regular APA procedures"; it rather "authorized" it to do so.[37] While the Dodd-Frank Act lowered the procedural floor for certain rulemaking, it did not abrogate the FTC's additional procedural safeguards. So the FTC's internal regulations, which require an ANPRM, do not thwart Congress's instructions in the Dodd-Frank Act. This is because the Act gave the Commission an option, *not* a "mandate," to dispense with the ANPRM requirement when promulgating rules for auto dealers, an option the FTC has chosen not to exercise, leaving the ANPRM requirement of subpart B to apply to "any trade regulation rule proceeding."[38]

Because the statutory language of the Dodd-Frank Act is clear, we do not need to look to the legislative history for guidance.[39] We note, however, that the legislative history around § 1029(d) of the Dodd-Frank Act is scant. The few mentions of § 1029(d) by Congressmen do not provide conclusive evidence of legislative intent to grant the FTC any independent substantive authority. During the House-Senate Conference Committee markup sessions, for example, then-Representative Barney Frank stated that the Dodd-Frank Act would not "increase[e] the authority that the FTC has. There is

---

[37] 12 U.S.C. § 5519(d).

[38] *See United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021) (holding that an unamended rule "continues to govern where it says it governs" even after a related statute has been amended).

[39] *See NPR Invs., L.L.C. ex rel. Roach v. United States*, 740 F.3d 998, 1007 (5th Cir. 2014) ("We follow the plain and unambiguous meaning of the statutory language … If the statute is ambiguous, we may look to the legislative history … for guidance.") (cleaned up).

no further grant of powers other than what the FTC already has."[40] Then-Senator Chris Dodd similarly stated that the Dodd-Frank Act was "not breaking new ground. [Congress was] just, in fact, providing some tools for them to [regulate automobile dealerships.]"[41] Furthermore, during the Senate's vote on the Dodd-Frank Act, then-Senator Sam Brownback's stated that § 1029(d) "was neither in the House or Senate bill and was not under consideration in either chamber. … Section 1029(d) was included without any evidence to justify its inclusion, or any debate for that matter."[42] Hence here legislative history is an embarrassment to text.

**2.**

The Commission raises several additional arguments. They are not convincing. First, the FTC highlights the Telephone Disclosure Dispute Resolution Act of 1992 ("TDDRA") as an analogous example of a trade regulation rule that was promulgated without an ANPRM.

Comparing the statutory text of the Dodd-Frank Act and the TDDRA, however, finds key differences that further support the conclusion that § 18(a)(1)(B) of the FTC Act—not the Dodd-Frank Act—is the statutory source of the CARS Rule. Unlike the Dodd-Frank Act, the TDDRA granted the FTC authority to prescribe rules "*under* this subsection"[43] and

---

[40] Transcript of House-Senate Conference Committee Markup of H.R. 4173, Financial Regulatory Overhaul Bill (June 24, 2010), http://www.cq.com/doc/congressionaltranscripts-3690270.

[41] Transcript of House-Senate Conference Committee Markup of H.R. 4173, Financial Regulatory Overhaul Bill (June 22, 2010), http://www.cq.com/doc/congressionaltranscripts-3690270.

[42] 156 Cong. Rec. S5911-12 (daily ed. July 15, 2010) (statement of Sen. Sam Brownback).

[43] 15 U.S.C. § 5711(a)(8) (emphasis added).

required that such rules "shall be *treated as* [rules] issued under section [18(a)(1)(B)]."[44] By contrast, the Dodd-Frank Act only relaxed statutory procedures for certain rules prescribed "under" § 18(a)(1)(B).[45]

Contrary to the Commission's assertion that the TDDRA contains "language very similar to that in Dodd-Frank[,]"the TDDRA shows that Congress knows how to give the FTC rulemaking authority independent of § 18(a)(1)(B) and then treat the finished rule like a § 18(a)(1)(B) rule. In other words, "Congress has shown that it knows how to adopt the omitted language or provision. Congress has enacted statutes that expressly include the language [the FTC] asks us to read in."[46] The text of the Dodd-Frank Act is clear and confirms that Congress chose a different path here: the FTC's auto dealer regulations are not merely "treated as" § 18(a)(1)(B) rules; they *are* § 18(a)(1)(B) rules.[47]

Second, the FTC argues that the scope provision of subpart B supports its conclusion that the CARS Rule falls under subpart C procedures. We disagree. The scope provision states, in relevant part:

> The rules in [Subpart B] apply to and govern proceedings for the promulgation of rules as provided in section 18(a)(1)(B) of the [FTC] Act[.] . . . Such rules will be known as trade

---

[44] *Id.* (emphasis added). The statutory language of the TDDRA cites to 15 U.S.C. § 57a(a)(1)(B) instead of § 18(a)(1)(B) of the FTC Act. They are the same; for consistency, we have used § 18(a)(1)(B).

[45] 12 U.S.C. § 5519(d).

[46] *Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019).

[47] *See* 12 U.S.C. § 5519(d).

regulation rules. All other rulemaking proceedings will be governed by the rules in subpart C of this part [.][48]

The Commission highlights the phrase "as provided in" to assert that the scope provision of subpart B does not refer to all rules made "under" § 18(a)(1)(B), but only to rules promulgated under the statutory procedures that apply to "ordinary Section 18(a)(1)(B) rulemakings." The difficulty with this interpretation, however, is that § 18(a)(1)(B) has no procedural requirements; the statutory procedures are found in a different subsection: section 18(b).[49] As subpart B's scope explicitly applies to rules made "as provided *in* section 18(a)(1)(B)," only an atextual journey would  read that as a reference to provisions in a different subsection. The text of subpart B is clear: it applies to all § 18(a)(1)(B) rules, regardless of procedure.

Finally, turning to purpose, the Commission urges that 16 C.F.R. § 1.10 of its internal regulations—which requires an ANPRM prior to rulemaking—was not intended to create a regulatory ANPRM requirement distinct from the statutory requirement, but rather, to implement Congress's intent. The FTC points to the regulation's history: the Commission promulgated its internal ANPRM rule the year after Congress enacted the statutory ANPRM requirement.[50] But even so, the plain text of the Commission's rule does not

---

[48] 16 C.F.R. § 1.7.

[49] *See* 15 U.S.C. § 57a(b).

[50] Org. Changes in the Comm'n's Rulemaking and Investigatory Procs., 46 Fed. Reg. 26,284, 26,284–86 (May 12, 1981).

No. 24-60013

limit its application in this manner,[51] and the FTC's appeal to purpose cannot overcome the clear text of its own rule.[52]

Unpersuaded by the Commission's arguments, we find that the substantive authority for the CARS Rule arises from § 18(a)(1)(B) of the FTC Act and that subpart B procedures apply in all rulemakings where § 18(a)(1)(B) provides authority. The FTC violated its own regulations when it failed to issue an ANPRM for the CARS Rule.

## B.

The FTC next asserts that if this Court disagrees with the Commission's reading of the relevant regulatory framework, we should defer to its interpretation under *Auer v. Robbins*[53] and *Kisor v. Wilkie*[54] as the regulation is sufficiently ambiguous, and the Commission's interpretation merits deference.

Under *Kisor*, a reviewing court must defer to the agency's interpretation of an ambiguous regulation if the following prerequisites are met.[55] First, the regulation must be "genuinely ambiguous, even after a court has resorted

---

[51] 16 C.F.R. §§ 1.7, 1.10 ("Prior to the commencement of *any* trade regulation rule proceeding, the Commission must publish in the Federal Register an advance notice of such proposed proceeding.") (emphasis added).

[52] *See Bostock v. Clayton County*, 590 U.S. 644, 653 (2020) ("When the express terms of a statute give us one answer and extratextual considerations suggest another, it's no contest. Only the written word is the law."); *and Kisor v. Wilkie*, 588 U.S. 558, 573–575 (2019) (explaining that courts interpret regulations with the same legal toolkit they use for statutory interpretation).

[53] 519 U.S. 452 (1997).

[54] 588 U.S. 558 (2019).

[55] *Kisor*, 588 U.S. at 574-579.

to all the standard tools of interpretation."[56] Second, the agency's reading must be "reasonable[,]" and "must come within the zone of ambiguity the court has identified[.]"[57] Third, the "regulatory interpretation must be one actually made by the agency" in its official capacity.[58] Fourth, the "agency's interpretation must in some way implicate its substantive expertise."[59] Last, an agency's interpretation must reflect "fair and considered judgment."[60]

Here, however, we see no relevant ambiguity in the FTC's regulatory framework. Again, the text of the FTC's internal regulations is clear: the Commission's ANPRM requirement applies in all rulemakings promulgated under the FTC's § 18(a)(1)(B) authority. As there is no zone of ambiguity, the FTC's interpretation cannot be "reasonable."[61] Lastly, the FTC's interpretation of its own rules does not "implicate its substantive expertise."[62] The question of administrative procedure—a legal question—does not require the FTC's "comparative expertise" in administering trade policy, but is one that "fall[s] more naturally into a judge's bailiwick."[63] The Commission's failure to meet the *Kisor* prerequisites does not merit deference.

## C.

---

[56] *Id*. at 574.

[57] *Id*. at 575-76.

[58] *Id*. at 578.

[59] *Id*. at 577.

[60] *Id*. at 579.

[61] *Id*. at 575-76.

[62] *Id*. at 577.

[63] *Id*. at 578.

The FTC asserts that even if the Commission was required to publish an ANPRM, its failure to do so was ultimately harmless error. We disagree. NADA has established sufficient prejudice under this Court's precedent.

In administrative law, the harmless error rule stems from the APA, which directs the reviewing court to take "due account . . . of the rule of prejudicial error."[64] This Court has held that the harmless error rule applies "only when it is one [error] that clearly had no bearing on the procedure used or the substance of decision reached."[65]

The Commission argues for harmless error on two grounds. First, the FTC asserts that NADA had "a full and fair opportunity to bring any information it wanted to the Commission's attention," citing *United States v. Johnson*. In *Johnson*, this Court held that the Attorney General's failure to issue notice-and-comment prior to the promulgation of an interim rule about sex-offender registration was harmless error.[66] The Court provided three reasons for its finding: first, there was "no suggestion that, if given the opportunity to comment, Johnson would have presented an argument the Attorney General did not consider[;]"[67] second, the rulemaking "involved a yes or no decision" rather than "nuanced and detailed regulations[;]"[68] and third, defendant's lack of involvement in the rulemaking process led "to the

---

[64] 5. U.S.C. § 706.

[65] *United States v. Johnson*, 632 F.3d 912, 930 (5th Cir. 2011) (cleaned up) (quoting *U.S. Steel Corp. v. EPA*, 595 F.2d 207, 215 (5ᵗʰ Cir. 1979)).

[66] *Id.*

[67] *Id.* at 932.

[68] *Id.*

No. 24-60013

conclusion that [he] was not practically harmed by the Attorney General's APA failings."[69]

But the case at hand is readily distinguished from *Johnson*. Unlike in *Johnson*, the petitioners here took full advantage of every opportunity to participate in the FTC's rulemaking process.[70] Though the FTC uses this point to argue that the rulemaking process—even without the ANPRM—sufficiently addressed NADA's concerns,[71] the argument also cuts the other way: there is reason to believe that petitioners would have used the advanced notice to participate earlier and more extensively than they were otherwise able to. Furthermore, the CARS Rule was not a "binary decision" regarding whether to issue a rule or not, but was a "nuanced and detailed regulation[] that greatly benefit[ed] from expert and regulated entity participation."[72] Lastly, there is evidence that the CARS Rule reflected comments received from stakeholders, including those from NADA.[73] The responsiveness of the

---

[69] *Id.* at 933.

[70] Such opportunities included participating in public roundtables and a financial workshop, as well as submitting "voluminous comments" in response to the NPRM preceding the CARS Rule.

[71] We acknowledge that—pursuant to statutory requirements—an ANPRM provides limited notice: the FTC need only provide a "brief description of the area of inquiry under consideration, the objectives which the Commission seeks to achieve, and possible regulatory alternatives under consideration by the Commission," and invite responses of interested parties. 15 U.S.C. § 57a(b)(2)(A); 16 C.F.R. § 1.10(b)(1).

[72] *Johnson*, 632 F.3d at 932.

[73] In response to comments, the FTC narrowed the scope of covered entities and chose not to finalize a required disclosure of price lists for optional add-ons. 89 Fed. Reg. at 601. Additionally, in response to NADA's comments, the FTC increased its estimate of the cost of compliance with the payment-disclosure requirement. *Id.* at 684.

No. 24-60013

Commission suggests the real possibility that the issuance of an ANPRM could have changed the outcome of the final rule.[74]

The FTC also argues that NADA has failed to meet their burden of establishing prejudice because they have not "identif[ied] any specific information [they] wanted to bring to the Commission's attention" that could not have been brought in petitioners' comments to the NPRM. Though "plaintiffs challenging an agency's error for procedural challenges must 'demonstrate prejudice[,]'"[75] the showing of a deprivation of a procedural benefit here is sufficient. NADA has shown that it is far from "clear" that the failure to issue an ANPRM "had no bearing on the procedure used or the substance of decision reached."[76] This was not harmless error.

The FTC violated section 706(2) of the APA when it elected to issue an ANPRM before publishing the final CARS Rule, a requirement of its own regulations and an error that was not harmless. We GRANT the petition for review and VACATE the CARS Rule. We decline to here address NADA's remaining substantive challenges to the Rule.

---

[74] *See Johnson*, 632 F.3d at 930.

[75] *Mock v. Garland*, 75 F.4th 563, 586 (5th Cir. 2023).

[76] *Johnson*, 632 F.3d at 930 (cleaned up).

18

No. 24-60013

Stephen A. Higginson, *Circuit Judge*, dissenting:

In 2010, Congress enacted the Dodd-Frank Wall Street Reform and Consumer Protection Act, which granted the Federal Trade Commission authority to issue rules defining "unfair or deceptive acts or practices" by motor vehicle dealers. *See* 15 U.S.C. § 57a(a)(1)(B). Congress included a prohibition on judicial review of FTC's regulatory analysis performed in conjunction with addressing these unfair trade practices, except in circumstances where the agency failed to conduct a regulatory analysis at all. *See* 15 U.S.C. § 57b-3(c)(1). Consistent with that congressional authority, the FTC conducted public round tables and reviewed over 100 comments about abuses and unfair practices by motor vehicle dealers. Following years of continued and widespread complaints, the FTC issued a notice of its Combating Auto Retail Scams Trade Regulation Rule (CARS Rule). The Commission conducted a comprehensive economic analysis, using reliable and independently corroborating evidence, to show that the motor vehicle market would benefit from the CARS Rule's imposition of price transparency and rules against deception, which would spur billions of dollars in economic benefit for U.S. consumers.[1]

Yet, our court sets the CARS Rule aside today. We invalidate a Rule that Congress authorized over a decade ago, on our assertion that petitioners, the National Automobile Dealers Association and the Texas Automobile Dealers Association, lacked advance notice of the Rule.

I dissent because the Rule was promulgated in 2022, after a decade of roundtables, comments, and over 100,000 consumer complaints, many leading to federal and state law enforcement actions against unfair and

---

[1] *See* Amicus Brief Amici Curiae, Professors of Economics, who estimate even higher predicted savings from the CARS Rule than that calculated by the FTC.

deceptive motor vehicle dealer practices. Petitioners participated in those public roundtables and submitted several of those comments. Moreover, once the Rule was promulgated, Petitioners submitted several comments, along with hundreds of pages of attachments. *See, e.g., Comment*, Submitted by Nat'l Automobile Dealers Ass'n (Sept. 12, 2022), Admin. Dkt. 145, https://www.regulations.gov/docket/FTC-2022-0046/comments. The FTC answered Petitioners' arguments and responded explicitly to National Automobile Dealers Association's comments when publishing the Final Rule. *See Combating Auto Retail Scams Trade Regulation Rule*, 89 FR 590-01.

Even assuming *advance* notice was due, petitioners have failed to meet their burden in showing that the lack of a formal advance notice of rulemaking prejudiced them. *See City of Arlington, Tex. v. FCC*, 668 F.3d 229, 243–44 (5th Cir. 2012) ("An agency's failure to comply with the APA is harmless when the agency's mistake clearly had no bearing on the procedure used or the substance of decision reached." (internal citations and quotation marks omitted)); *see also Shinseki v. Sanders*, 556 U.S. 396, 413 (2009) (concluding agency's failure to provide notice was harmless when petitioner did not identify what additional information he would have provided or how additional notice would have changed the result of the proceedings); *United States v. Johnson*, 632 F.3d 912, 930 (5th Cir. 2011) (holding the agency's failure to provide interim notice harmless because the agency addressed the same issues raised by the petitioner who made no showing that the outcome of the process would have differed if the requisite notice had been provided).

Furthermore, Petitioners' challenge to the FTC's basis for the CARS Rule as arbitrary and capricious lacks merit. As Petitioners concede in their reply, the FTC was not required to make findings of widespread misconduct or a regulatory gap before promulgating the Rule. The FTC's factual findings showing ample evidence of unfair and deceptive trade practices, including hidden or junk fees, more than passes court scrutiny because the FTC was

acting within a "zone of reasonableness." *See FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021).

Last, our court is precluded from second-guessing the FTC's cost-benefit analysis, which forms part of its regulatory analysis. *See* 15 U.S.C. § 57b-3(c)(1). Even if Petitioners' argument that the APA's arbitrary-and-capricious standard still applies is correct, they have not demonstrated that the FTC's analysis was unreasonable. Our review is deferential, and we do not substitute our own judgment for that of the FTC's. *See Prometheus Radio Project*, 592 U.S. at 423. Petitioners argue that the FTC should have used or considered different data and interpreted that data differently. Assuming that Petitioners' analytical and data collection process would have been superior, none of the omissions or data issues Petitioners identify in the FTC's cost-benefit analysis turns the FTC's process into an arbitrary or capricious one.

Considering Petitioners' failure to prove prejudice or that the FTC's rulemaking process was arbitrary or capricious, it is regrettable that our court still sets aside the CARS Rule—a Rule promulgated over a decade after Congress authorized the FTC to regulate unfair and deceptive motor vehicle dealer practices, which inflict immense, proven harm on U.S. consumers.